PEOPLE OF THE STATE OF NEW YORK, By Eliot SPITZER Attorney General of the State of New York; Buffalo GYN Womenservices, Inc., Dr. Shalom Press, M.D.; Planned Parenthood of the Rochester/Syracuse Region; Dr. Morris Wortman, M.D.; Pro–Choice Network of Western New York, Plaintiffs,

v.

OPERATION RESCUE NATIONAL; Last Call Ministries; Rescue Rochester; Lambs of Christ; Christian American Family Life Association, Inc. (CAFLA); Bob Behn; Bonnie Behn; Philip "FLIP" Benham; Mary Melfi; Norman Weslin; Gerald Crawford; Michael Warren; Richard Armenia; Mary Arno; Paul Arno; John Blanchard; John Barron; Albert Boettcher; Eva Boldt; Martin Chamberlain; Ken Delozier; Amy Dorscheid; Robert Dorscheid; Daniel Drury; Darren Drzymala; Alan Fricke; Amy Fricke; James Govola; Mary Sue Govola; Kenneth Harms; Michael Iluzzi; Karen Jackson; Eric Johns; Bernice Kleinhammer; Paul Koehn; Richard Krulewicz; Daniel Lamantain–Leatherman; Rosina Lotempto; Edmund Lutz; Dennis Marriott; David Martin; Arnold Matheson; Michael McBride; William Michael; James Missall; Michael Mombrea; Dwight Monagan; Jacob Mueller; Sharon Murphy; Linda Palm; Hettie Pascoe; Robert Pokalski; Mary Beth Powley; Dan Przywuski; Robert Raco; Jacqueline Rademacher; Rene Riddle; W. Randolph Smith; William Smith; Sherrie Sterlace; Roseanne Sutter; Gerald Sutter; John Urgo; John Vandeven; Mickey Vandeven; Nancy Walker; Phyllis Walker; Calvin Zastrow; John and Jane Does, the last two named being fictitious names, the real names of such persons being currently unknown but

who are active in defendant organizations or act in concert with the above named individuals to engage in, or who will engage in, the conduct complained of herein, Defendants.

No. 99–CV–209A.

United States District Court,
W.D. New York.

June 16, 1999.

Hon. Eliot Spitzer, Attorney General, Barbara Kavanaugh, Jennifer Brown, James Morrissey, Assistant Attorneys General Buffalo, NY, for People of the State of New York, by Eliot Spitzer Attorney General of the State of New York.

Lucinda Finley, SUNY at Buffalo Law School, Glenn Murray, Buffalo, NY, for Buffalo GYN Womenservices, Dr. Shalom Press, M.D., Planned Parenthood of the Rochester/Syracuse Region, Dr. Morris Wortman, M.D., Pro–Choice Network of Western, New York.

Frederick Nelson, American Liberties Institute, Orlando, FL, for Operation Rescue National, Philip Benham.

Laurence Behr, Barth, Sullivan & Behr, Buffalo, NY, William Ostrowski, Buffalo, NY, of counsel, for Last Call Ministries, Bob Behn, Bonnie Behn, Richard Armenia, Mary Arno, Paul Arno, John Barron, Albert Boettcher, Eva Boldt, Ken Delozier, Darren Drzymala, Alan Fricke, Amy Fricke, James Govola, Mary Sue Govola, Kenneth Harms, Erick Johns, Paul Koehn, Paul Krolewicz (sued as Paul Krulewicz), Daniel Lamantain–Leatherman, Rosina Lotempio, Edmund Lutz, Dennis Marriott, David Martin, William Michael, James Missall, Michael Mombrea, Jacob Mueller, Sharon Murphy, Linda Plam (sued as Linda Palm), Hettie Pascoe, Dan Przywuski, Jacqueline Rademacher, Sherrie Sterlace, Roseann Sutter, Gerald Sutter, John Urgo, John Vandeven, Mickey Vandeven, Nancy Walker, Phyllis Walker, Calvin Zastrow.

Stasia Zoladz Vogel, Derby, NY, for Lambs of Christ, Christian American Family Life Association, Inc. (CAFLA), Norman Weslin, Barton Chamberlain (sued as Martin Chamberlain), Bernice Kleinhammer.

Anthony Adams, Jr., Gates and Adams, Rochester, NY, for Amy Dorscheid, Robert Dorscheid.

Daniel Drury, Buffalo, NY, pro se.

Gabriel Kralik, Cold Spring, NY, for Rene Riddle.

Mary Aramini, Rochester, NY, for Mary Melfi, Michael McBride, Robert Pokalsky (sued incorrectly as Robert Pokalski), Mary Beth Powley, Robert Raco, W. Randolf Smith, William Smith, Rescue Rochester, Gerald Crawford, Michael Warren.

Arnold Matheson, Poughkeepsie, NY, pro se.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

Currently before the Court are motions by various defendants for various forms of relief. Defendants Operation Rescue National ("ORN") and Philip "Flip" Benham

have moved to dismiss the claims against them for lack of personal jurisdiction. Defendants Norman Weslin, Bernice Kleinhammer and Karen Jackson have moved to dismiss the claims against them for insufficiency of service of process. Finally, defendants Rescue Rochester, Mary Melfi, Gerald Crawford, Amy Dorscheid, Robert Dorscheid, Michael Warren, Michael McBride, Robert Pokalski, Mary Beth Powley, Bernice Kleinhammer, W. Randolph Smith and William Smith (collectively referred to herein as the "Rochester defendants") have moved to sever the claims against them and to transfer the severed claims to the "Rochester Division,"[1] or alternatively, to try the claims against them separately in Buffalo.

After reviewing the submissions of the parties, the Court denies all pending defense motions.

## BACKGROUND

### A. *Nature of the Action and Parties*

Plaintiffs include the People of the State of New York, by Eliot Spitzer, Attorney General of the State of New York, several medical facilities and doctors that provide abortion-related services, and organizations that advocate abortion rights. Plaintiffs seek to enjoin defendants, who are individuals and organizations who allegedly plan, engage in or have engaged in protests outside facilities that provide abortion-related services in the Western District of New York, from protesting within the Western District in a manner that violates the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 ("FACE"), creates a public nuisance, or is otherwise unlawful.

In their initial submissions, plaintiffs described the recent history of anti-abortion protests in this District and provided evidence about the then-upcoming "Operation Save America" protests, which were scheduled to take place throughout the District from April 18 to April 25, 1999.

In April 1999, the Court held a three-day hearing, and reviewed substantial evidentiary submissions, before issuing a temporary restraining order ("TRO") against all defendants on April 15, 1999. The Court has scheduled an evidentiary hearing on plaintiffs' application for a preliminary injunction to begin on July 28, 1999.

The New York State Attorney General obviously represents the citizens of the Western District of New York. Plaintiff doctors and abortion-related facilities are located in Buffalo, Rochester, Brighton and Amherst, all in this District. Additional abortion-related facilities located in this District include Planned Parenthood clinics in Batavia, Greece, Lockport, Niagara Falls, North Tonawanda, and West Seneca.

Defendants reside in numerous cities and towns in the Western District, and several reside outside of the District. Each of the defendants, according to the Complaint, has planned and/or engaged in conduct that threatened to unlawfully impede, or has unlawfully impeded access to abortion-related services in this District.

The alleged activities of the various defendants are not geographically circumscribed, nor are they independent of one another. For example, defendant Norman Weslin, who was previously convicted of FACE violations in Rochester, now lives in Buffalo. (Affidavit of Elizabeth Sholes, sworn to March 21, 1999 ("Sholes Aff.") at ¶ 16). Defendant Weslin and his organization, the Lambs of Christ, have engaged in blockades of abortion facilities in many locations, including Rochester. (*Id.* at ¶¶ 16–17). Defendants Gerald Crawford, Michael Warren and Mary Beth Powley, who live in the Rochester area, were arrested for blockading Buffalo-area abortion facilities during the 1992 "Spring of Life" protests. (*Id.* at ¶ 14). Defendant Mary Melfi, who lives in the Rochester area, has allegedly engaged in protests in

---

**1.** The Court notes that the court in Rochester is not a separate statutory "division" of this District. 28 U.S.C. § 112.

Rochester and at one or more Planned Parenthood locations in the Western District. (Affidavit of Carol Love, sworn to March 20, 1999 ("Love Aff.") at ¶¶ 22–23, 25).

Before this action was begun, defendants ORN, a nationwide organization headquartered in Dallas, Texas, and Philip "Flip" Benham, a resident of Dallas, had announced "Operation Save America," a week of protests scheduled to take place throughout the Western District from April 18 to April 25, 1999. (*See* Sholes Aff. at Exhibits B & C; Affidavit of Robert Behn, sworn to April 6, 1999 ("Behn Aff.") at Exhibit A). Defendant Benham, who is the National Director of ORN, (Affidavit of Philip Benham, sworn to April 3, 1999 ("Benham Aff.") at ¶ 3), has traveled to New York State repeatedly to participate in protests at abortion facilities, and in January 1999, protested at plaintiff Buffalo GYN Womenservices in anticipation of further protests in New York State. (Benham Aff. at ¶¶ 9, 16; Affidavit of Helen Dailey, sworn to March 21, 1999 ("Dailey Aff.") at ¶ 21). Benham is the author of the ORN newsletter (Benham Aff. at ¶ 6), and in January 1999, used the newsletter to invite other anti-abortion protesters to come to Buffalo and Rochester during Operation Save America. (Sholes Aff. at Exhibit B).

In March 1999, ORN's Internet site identified defendants Rev. Robert Behn and Bonnie Behn, who are Buffalo residents, as well as defendants Michael Warren and Gerald Crawford, who live in or near Rochester, as involved in planning Operation Save America. (*Id.* at Exhibit C). Defendant Warren, who lives in Spencerport, New York, and defendant Rescue Rochester used the Rescue Rochester newsletter to urge other anti-abortion protesters to participate in Operation Save America. (Love Aff. at Exhibit F). The published calendar of Operation Save America events included demonstrations in

Buffalo, Rochester, Amherst and Batavia. (Behn Aff. at Exhibit A).

**B. *Service of Process***

This action was initiated by the filing of a complaint on March 22, 1999. On March 24, 1999, the Court issued an *ex parte* Order directing how service was to be effected. On March 31, 1999, the Court issued another *ex parte* Order with respect to service of some of the defendants. Plaintiffs have filed sworn affidavits describing how they served defendants Norman Weslin and Bernice Kleinhammer pursuant to those Court Orders. (Affidavits of Service, attached as Exhibit A to the Declaration of Jennifer K. Brown executed June 3, 1999 ("Brown Decl.")). Plaintiffs have also filed a sworn affidavit of service of the summons and complaint regarding defendant Karen Jackson, indicating that she was served on April 20, 1999. (Brown Decl. at Exhibit B).

Counsel for defendants Weslin, Kleinhammer and Jackson states that, upon information and belief, those defendants have not been served. (Unsworn Motion to Dismiss, dated April 6, 1999, signed by Stasia Zoladz Vogel, Esq. at ¶¶ 8–9 & 11).[2] These defendants have not made any further submission contesting service.

## DISCUSSION

**A. *Personal Jurisdiction***

 Defendants ORN and Philip Benham have moved, presumably under Federal Rule of Civil Procedure 12(b)(2), to dismiss the claims against them for lack of personal jurisdiction. First, defendants assert that ORN is not an entity that can be sued, claiming that it is merely "an associational place for ideas and concepts regarding the abortion" issue. The Court finds this argument without merit. ORN is an unincorporated association with the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). In fact, it

2. Ms. Vogel has not made the same claim with respect to defendants Lambs of Christ, the Christian American Family Association, or

Barton Chamberlain, all of whom she also represents. Plaintiffs have discontinued the action with respect to John Blanchard.

has frequently been sued for its activities in federal courts throughout the nation, including in this Circuit. *See, e.g., People of the State of New York v. Operation Rescue National,* 80 F.3d 64 (2d Cir.), *cert. denied,* 519 U.S. 825, 117 S.Ct. 85, 136 L.Ed.2d 42 (1996); *Town of West Hartford v. Operation Rescue,* 991 F.2d 1039 (2d Cir.), *cert. denied,* 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993).

Further, defendant Benham's own affidavit belies the assertion that ORN is no more than a "place for ideas." As he acknowledges, ORN engages in activities such as "planning, organizing, directing, and conducting ... rallies, ... sidewalk counseling and speaking events at abortion" clinics. (Benham Aff. at ¶ 4). Benham also acknowledges that he serves this association in the capacity of "National Director." (*Id.* at ¶ 3). ORN publishes and distributes newsletters which solicit participation in the events that it plans, organizes, and directs. It also maintains an Internet site in its organizational name, *www.orn.org,* on which it posts announcements of the upcoming events that it is planning, including exhortations to participate. Plaintiffs have submitted copies of these newsletters and printouts from the Internet site pertaining to the events that gave rise to this suit, (Sholes Aff. at Exhibits B & C), and they are also attached to the affidavit of defendant Robert Behn. (Behn Aff. at Exhibit A). As these newsletters plainly indicate, ORN also maintains a post office box mailing address and a telephone number and a fax line. As this Court has previously held, an association that produces and distributes literature encouraging participants to protest at abortion clinics, that has official spokespersons and designated leaders who organize and plan its activities, that possesses a mailing address and telephone number, and that engages in correspondence "possesses adequate characteristics of a legal entity to be enjoined or held in contempt." *Pro–Choice Network of W.N.Y. v. Project Rescue,* 799 F.Supp. 1417, 1423 (W.D.N.Y. 1992), *aff'd,* 67 F.3d 377 (2d Cir.1995) (in

banc), *aff'd in part, rev'd in part,* 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997).

 Defendants' next contention is that the Court lacks personal jurisdiction because defendant Benham has not engaged in illegal activities nor been arrested during the six visits he made to New York State to help plan the events that figure prominently in the Complaint. This argument is irrelevant, because whether one has been previously arrested, convicted, or found in violation of any law in the state is not the proper test for the assertion of personal jurisdiction. Moreover, this argument places the liability cart before the jurisdictional horse—whether Benham has engaged in acts that violate or threaten to violate the federal FACE statute or state tort or civil rights law is the ultimate question on the merits. The jurisdictional issue, on the other hand, is whether Benham's activities in New York have been such that this Court's exercise of personal jurisdiction over him will comport with the constitutional requirements of due process and that the criteria of the New York long–arm statute will be satisfied. *Kronisch v. United States,* 150 F.3d 112, 130 (2d Cir.1998).

All plaintiffs need do to defeat the motion to dismiss for lack of personal jurisdiction is to " 'make a prima facie showing of jurisdiction through [their] own affidavits and supporting materials.' " *Kronisch,* 150 F.3d at 130 (quoting *Welinsky v. Resort of the World D.N.V.,* 839 F.2d 928, 930 (2d Cir.1988)). "In analyzing the affidavits, the facts are construed in the light most favorable to the plaintiff with all doubts resolved in its favor, 'notwithstanding a controverting presentation by a moving party.' " *Champion Motor Group, Inc. v. Visone Corvette of Mass., Inc.,* 992 F.Supp. 203, 205 (E.D.N.Y.1998) (quoting *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993)).

 The exercise of personal jurisdiction "comports with the Fourteenth Amendment's Due Process Clause only

where minimum contacts [exist] between the defendant and the forum State, so as not to offend traditional notions of fair play and substantial justice." *LiButti v. United States,* 178 F.3d 114, 1999 WL 339705 (2d Cir. May 28, 1999) (internal quotations and citations omitted). Central to the minimum contacts inquiry is whether "the defendant's conduct and connection to the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotations and citation omitted).

A federal district court has personal jurisdiction over a nonresident defendant who could be subjected to jurisdiction in the state in which the district court is located. Fed.R.Civ.P. 4(k)(1)(A). The New York long-arm statute provides for personal jurisdiction over a nonresident defendant who, in person or through an agent, "transacts any business within the state." N.Y.C.P.L.R. § 302(a)(1).

■ Under the "transacting business" section of New York's long-arm statute, plaintiffs must show that Benham purposefully availed himself of the privilege of conducting activities within New York such that bringing him before a New York court does not offend due process, and that the causes of action arise out of those activities in the sense that there must be an articulable nexus or substantial relationship between the claims asserted and the actions that occurred in New York. *Kronisch,* 150 F.3d at 130; *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198–99, 522 N.E.2d 40 (N.Y.1988); *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 644–45, 419 N.E.2d 321 (1981).

■ Plaintiffs' submissions establish that defendant Benham signed and distributed in New York numerous flyers announcing an event called "Operation Save America," to consist of protest activities at abortion clinics in Buffalo and Rochester during April 18–25, 1999. (Sholes Aff. at Exhibits B). Defendant Benham admits to writing these pamphlets and distributing them nationwide, including in New York. (Benham Aff. at ¶¶ 6–8). He also admits to six trips to New York to visit Buffalo and Rochester, to speak out against abortion, and to help plan the Operation Save America events. (Benham Aff. at ¶¶ 16–17).

During one of these visits to the state, defendant Benham prepared and distributed a press release dated January 9, 1999, issued under ORN letterhead, announcing a Buffalo press conference about the Operation Save America events. (Sholes Aff. at Exhibit B). Defendant Benham is listed as one of the individuals to contact for further information. (*Id*). Also on January 9, 1999, defendant Benham allegedly appeared at plaintiff Buffalo GYN Womenservices' abortion clinic in Buffalo to engage in protest activities. He allegedly stood with other protesters in the clinic driveway, thereby obstructing access to the clinic, and refused requests to move out of the driveway. (Dalley Aff. at ¶ 21). On January 11, 1999, defendant Benham and defendant Robert Behn held the previously–announced press conference in Buffalo. (Benham Aff. at ¶ 7).

■ Plaintiffs' causes of action and request for injunctive relief under FACE and state law arise directly out of the activities of defendants Benham and ORN within New York, thus satisfying the "nexus" component of N.Y.C.P.L.R. § 302(a)(1). The fact that defendant Benham was a leader, planner and recruiter of participants for protest activities in New York and made six trips into the state in furtherance of these plans is sufficient evidence of minimum contacts to constitute "transacting business" for purposes of the New York long–arm statute and to satisfy due process. *See Champion,* 992 F.Supp. at 205 (court found that individual defendant was subject to personal jurisdiction because he made two trips into the state as part of negotiations to enter a business arrangement with plaintiff); *see also Kronisch,* 150 F.3d at 130–31 (court held

that a former CIA official was subject to New York's long–arm statute because he had made approximately six trips to New York to discuss possible CIA drug–testing consulting arrangements).

In sum, the Court finds that defendants Benham and ORN are subject to personal jurisdiction in New York under the state long–arm statute. Further, the Court's exercise of personal jurisdiction over these defendants will not, under the facts and circumstances present here, offend the constitutional requirements of due process. Accordingly, the Court denies the motion of defendants Benham and ORN to dismiss the claims against them for lack of personal jurisdiction.

## B. Service of Process

Defendants Norman Weslin, Bernice Kleinhammer and Karen Jackson have moved, apparently under Federal Rule of Civil Procedure 12(b)(5), to dismiss the action against them due to insufficiency of service of process. In all challenges to sufficiency of process, the burden of proof lies with the party raising the challenge. *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir.1986). "A signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'" *O'Brien v. R.J. O'Brien Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (quoting *Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir.1955)). The objections to service must be specific and must point out in what manner the plaintiff has failed to satisfy the service provision utilized. *Id.* at 1400.

■ Here, defendants Weslin, Kleinhammer and Jackson have failed to carry their burden and their motion to dismiss due to insufficiency of service of process must therefore be denied. Defendants have not contested plaintiffs' affidavits of service or submitted affidavits that call into question the adequacy of service. Nor have they pointed out how plaintiffs failed to satisfy the Court's Orders with respect to service. "The mere denial of receipt of service ... is insufficient to overcome the presumption of validity of the process server's affidavit." *Nolan v. City of Yonkers*, 168 F.R.D. 140, 144 (S.D.N.Y.1996) (citations omitted).

## C. Severance and Transfer

■ The Rochester defendants have moved to sever the claims against them and to transfer the severed claims to the "Rochester Division," or alternatively, to try the claims against them separately in Buffalo.[3] The Rochester defendants rely on the transfer statute, 28 U.S.C. § 1404(a),[4] and rest their request for relief primarily on the inconvenience of having to travel from Rochester to Buffalo.

■ "There can be no doubt that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978) (citations omitted), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). To succeed on their motion, defendants "must meet the substantial burden of demonstrating by clear-cut evidence that 'the balance of conveniences and the interests of justice favor a trial in the proposed transferee forum.'" *Snyder v. Madera Broadcasting, Inc.*, 872 F.Supp. 1191, 1199 (E.D.N.Y.1995) (quot-

---

**3.** These defendants made an oral motion for severance and transfer of the claims against them to the Rochester Division during the TRO hearing, on April 9, 1999. The Court denied the motion.

**4.** Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As stated above, the court in Rochester is not a separate statutory "division" of this District. Thus, it is questionable whether § 1404(a) would even apply to this case. However, the Court will give the Rochester defendants the benefit of the doubt and conduct the § 1404(a) analysis anyway.

ing *St. Cyr v. Greyhound Lines, Inc.,* 486 F.Supp. 724, 727 (E.D.N.Y.1980)). In making this determination, relevant factors include: (1) plaintiff's ·initial choice of forum; (2) the convenience of parties and witnesses; (3) the locus of operative facts and relative ease of access to sources of proof; (4) the availability of process to compel testimony; (5) the desirability of trying the case before the forum most familiar with the substantive law; (6) questions as to the enforceability of a judgment if one is obtained; and (7) the interest of justice. *Id.; O'Brien v. Goldstar Technology, Inc.,* 812 F.Supp. 383, 385 (W.D.N.Y. 1993). Plaintiffs' choice of venue is "entitled to substantial consideration," *In re Warrick,* 70 F.3d 736, 741 (2d Cir.1995), and that choice "should not be disturbed unless the balance of the several factors is strongly in favor of the defendant." *O'Brien,* 812 F.Supp. at 386. Defendants here have failed to make the "strong case for a transfer" that is required. *Id.* at 385.

■ Defendants' motion assumes that the evidence concerning defendants who live in Rochester is separable from the evidence concerning defendants who live in Buffalo. This assumption is incorrect, however, because it fails to recognize that plaintiffs seek to enjoin *all* defendants from unlawful protests at *any* abortion facilities in this District. Plaintiffs must— as they did in support of their motion for a TRO—support their requests for specific buffer zones by evidence about specific facilities. Because plaintiffs seek to enjoin every defendant at every facility, this evidence would have to be presented twice if two preliminary injunction hearings were held. Plaintiffs would also have to present evidence of irreparable harm twice if the

defendants' motion were to be granted. Because "transfer would merely shift the inconvenience from one party to the other, the plaintiffs choice of forum should not be disturbed." *O'Brien,* 812 F.Supp. at 386 (internal quotations and citation omitted); *see also Union Pac. R.R. v. Woodahl,* 308 F.Supp. 1002, 1008 (D.Mont.1970) (denying motion to transfer from one division of district to another, where some defendants resided in each division, and some events giving raise to claim occurred in each division).⁵

Moreover, the affidavit submitted in support of defendants' motion fails to specify clearly the key witnesses to be called or to make a general statement of what their testimony will cover, as required in this Circuit when moving for transfer based on alleged inconvenience. *Factors, Etc.,* 579 F.2d at 218. More critically, defendants have not demonstrated that any witnesses are either unwilling or unable to appear. *Zets v. Scott,* 498 F.Supp. 884, 886 (W.D.N.Y.1980). Nor could defendants make such a showing, because any witness available in Rochester is equally available in Buffalo. Fed.R.Civ.P. 45(b)(2) (subpoena may be served anywhere within judicial district).

Defendants fail to cite any case in which a distance comparable to the sixty miles that lie between Buffalo and Rochester served as the basis of a transfer.⁶ To the contrary, courts have repeatedly held that traveling such a distance is not the type of "inconvenience" that supports a motion to transfer under § 1404(a). *See, e.g., Carlile v. Continental Airlines, Inc.,* 953 F.Supp. 169, 171 (S.D.Tex.1997) (refusing to transfer case approximately fifty miles from

---

**5.** *French Transit, Ltd. v. Modern Coupon Sys.,* 858 F.Supp. 22 (S.D.N.Y.1994) and *Aluminal Industries v. Newtown Commercial Assocs.,* 89 F.R.D. 326 (S.D.N.Y.1980), which defendants rely on for their transfer analysis, are inapplicable here because they concern situations where venue was improper in the first instance.

**6.** The only case defendants cite that concerns a transfer between divisions of a judicial dis-

trict, *Torres v. Continental Bus Sys.,* 204 F.Supp. 347 (S.D.Tex.1962), relied not on the convenience of witnesses, but on a since-repealed statute. *Id.* at 348 (relying on former 28 U.S.C. § 1393). The repealed statute required cases against a single defendant to be brought in the division of that defendant's residence, and expressly permitted cases against multiple defendants who resided in more than one division of a district to be brought in any division.

Galveston Division to Houston Division); *Market Transition Facility of N.J. v. Twena,* 941 F.Supp. 462, 467–68 (D.N.J.1996) (refusing transfer from Newark to Brooklyn) (citing cases); *Lee v. Ohio Cas. Ins. Co.,* 445 F.Supp. 189 (D.Del.1978) (refusing transfer; finding that travel of sixty miles from Baltimore to Wilmington not unduly burdensome to parties and witnesses); *Paragon Int'l, N.V. v. Standard Plastics, Inc.,* 353 F.Supp. 88, 92 (S.D.N.Y.1973) (refusing transfer from Southern District of New York to Philadelphia); *Leesona Corp. v. Duplan Corp.,* 317 F.Supp. 290, 299–300 (D.R.I.1970) (additional 200 miles of travel from New York to Rhode Island insignificant in § 1404(a) analysis); *Jenkins v. Wilson Freight Forwarding Co.,* 104 F.Supp. 422, 425 (S.D.N.Y.1952) (in rejecting a motion to transfer a case from New York City to Newark, New Jersey, court stated that the transfer statute "was designed and reserved for those instances where the transfer was sought to a District Court substantially distant from the district where the action had been instituted; otherwise it is difficult to imagine that there could be real inconvenience to the parties or witnesses").

Even if the Court were persuaded by the Rochester defendants' argument regarding inconvenience, it would still deny the transfer motion because the other relevant factors either do not favor it or weigh against it. "The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Arrow Electronics, Inc. v. Ducommun Inc.,* 724 F.Supp. 264, 266 (S.D.N.Y.1989) (citations omitted). As mentioned above, the subpoena power is equally effective in either Rochester or Buffalo.

The desirability of trying the case before the forum most familiar with the substantive law, *O'Brien,* 812 F.Supp. at 385, strongly favors this Court's retention of the entire action. This Court devoted substantial resources to this action before issuing the TRO on April 15, 1999. It is therefore appropriate for this Court to conduct the preliminary injunction proceedings. *See Brotherhood of Locomotive Firemen & Enginemen v. Central of Georgia Ry. Co.,* 411 F.2d 320, 324–25 (5th Cir.1969) (holding that where a district court had issued a TRO to prohibit union from striking against any railroad, it was improper for another district court to have entertained application for injunction against strike at a particular railroad). Moreover, as the trial Court in the *Pro-Choice Network* case, this Court's familiarity with the governing law "constitutes a precious asset, increasing in value with the passage of time, and which will undoubtedly lighten the burden of litigants and courts alike." *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 620 (2d Cir.1968) (granting motion to transfer case to another district where judge designated to handle all related proceedings) (internal quotations and citation omitted), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). This case obviously takes place against the backdrop of the *Pro-Choice Network* case, and the Court's familiarity with that action is invaluable to its understanding of the present controversy. The Court has spent well over a thousand hours working on the *Pro-Choice Network* case. This case involves many of the same issues, locations and parties. Common sense calls for the Court to retain this case in light of its experience with the *Pro-Choice Network* case.

■ Finally, the interest of justice requires consideration of judicial economy. "There is a strong policy favoring the litigation of related claims in the same tribunal in order that ... duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham,* 398 F.2d at 619. Severing portions of the suit now for a preliminary injunction hearing in another court would not only result in duplicative litigation, but would also expose plaintiffs and defendants to the risks of inconsistent decisions, with the possibility of differing parameters for protest activities at any given site, depend-

ing on which defendants were involved. In this case, inconsistent results would create an enforcement nightmare not only for the private plaintiffs, but also for law enforcement authorities. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960); *Factors Etc.*, 579 F.2d at 219 (recognizing that "[e]fficient and responsible judicial administration dictate[s]" that actions presenting plaintiffs' identical claims against various defendants be within one court).

■ The Rochester defendants argue that if the Court declines to sever the claims against them and transfer the case to Rochester, the Court should still sever the claims against them and try their case here in Buffalo separately from the other defendants. The Court finds this argument without merit.

■ "Severance is a 'procedural device to be employed only in exceptional circumstances.'" *Hatfield v. Herz*, 9 F.Supp.2d 368, 373 (S.D.N.Y.1998) (quoting *Marisol A. v. Giuliani*, 929 F.Supp. 662, 693 (S.D.N.Y.1996), *aff'd*, 126 F.3d 372 (2d Cir.1997)). The Rochester defendants assert that unless claims against them are severed, they will be prejudiced because the jury will be presented with inflammatory evidence regarding Buffalo area protest activities that are more aggressive in nature than their own activities. While it is proper for a court to consider "whether the party requesting the severance will be prejudiced if it is not granted," *id.*, the Rochester defendants' assertion of prejudice here is groundless. The preliminary injunction hearing will be before the Court, not a jury. There is little or no danger that the Court will erroneously attribute liability for one defendant's actions to another. *See Equal Employment Opportunity Comm'n v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir.1994).

*CONCLUSION*

For the reason stated, the Court: (1) denies the motion of defendants ORN and Benham to dismiss the claims against them for lack of personal jurisdiction; (2) denies the motion of defendants Weslin, Kleinhammer and Jackson to dismiss the claims against them for insufficiency of service of process; and (3) denies the Rochester defendants' motion to sever the claims against them and to transfer the severed claims to the "Rochester Division," or alternatively, to try the claims against them separately in Buffalo.

IT IS SO ORDERED.