**In Re: CRIMINAL CONTEMPT PROCEEDINGS AGAINST Gerald CRAWFORD and Michael Warren**

**United States of America, Appellee,**

v.

**Gerald Crawford and Michael Warren, Defendants–Appellants.**

**Docket Nos. 02–1201(L), 02–1202(CON).**

United States Court of Appeals, Second Circuit.

Argued: Oct. 15, 2002.

Decided: May 13, 2003.

Marybeth Covert, Asst. Federal Defender, (Kimberly A. Schechter, Asst. Federal Defender on the brief) Buffalo, NY, for Defendant–Appellant Gerald Crawford.

Bryan J. Brown, Esq., Tupelo, Mississippi, for Defendant–Appellant Michael Warren.

Paul J. Campana, Asst. U.S. Atty., (Michael A. Battle, U.S. Atty. on the brief) Buffalo, NY, for Appellee.

Before: NEWMAN and POOLER, Circuit Judges, and JONES,* District Judge.

JONES, District Judge.

Appellants Gerald Crawford and Michael Warren appeal their criminal con-

---

* Honorable Barbara S. Jones of the United States District Court for the Southern District of New York, sitting by designation.

1. This appeal relates to litigation that began in 1992 involving anti-abortion protests occurring in the Western District of New York. The background facts of this case are presented in the district court opinion granting an injunction limiting such activities, and this Court's opinions with respect to that injunc-

tempt convictions for violating a temporary restraining order ("TRO" or "the Order") following a bench trial before Judge Richard J. Arcara of the United States District Court for the Western District of New York. The appellants contend that the TRO, which was issued by Judge Arcara on April 15, 1999, and extended on April 29, 1999, automatically expired pursuant to Fed.R.Civ.P. 65(b) prior to the conduct at issue, and thus could not support a conviction for criminal contempt. We disagree and affirm the district court's convictions for criminal contempt.

## I. BACKGROUND

The TRO underlying this appeal was issued in *New York v. Operation Rescue Nat'l,* 69 F.Supp.2d 408 (W.D.N.Y.1999).[1] In that case, the plaintiffs—the People of the State of New York, medical facilities and doctors who provide reproductive health care services, and other organizations who advocate choice for women with respect to abortion—commenced suit on March 22, 1999 against 68 defendants, including appellants Crawford and Warren. The plaintiffs sought a TRO and preliminary injunction to establish limited buffer zones around abortion facilities in order to prevent the defendants from engaging in illegal activities designed to disrupt access to those abortion facilities.

Judge Arcara granted plaintiffs' application for an expedited hearing on their motion for a TRO on March 24, 1999. The hearing was scheduled for April 8, 1999,

tion. *Pro–Choice Network of Western New York v. Project Rescue Western New York,* 799 F.Supp. 1417 (W.D.N.Y.1992), *aff'd in part & rev'd in part sub nom. Pro–Choice Network of Western New York v. Schenck,* 67 F.3d 359 (2d Cir.1994), *aff'd in banc,* 67 F.3d 377 (2d Cir. 1995), *aff'd in part and rev'd in part,* 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997). For purposes of the present appeal we assume familiarity with those cases.

and the defendants were given until April 6, 1999 to respond to the motion. The defendants submitted various opposition papers on April 6 and 7.

The TRO hearing was held on April 8, 9, and 12. Gerald Crawford and Michael Warren appeared at that hearing *pro se*. The defendants contested the TRO, both legally and factually. Several defendants submitted affidavits denying the factual allegations contained in plaintiffs' complaint and motion papers. When the proceedings were concluded on April 12, 1999, Judge Arcara gave the parties until the following day to file any supplemental papers. He also set a briefing schedule before closing the record. Additional affidavits were filed on April 13 and 14, 1999.

On April 15, 1999, the district court issued a TRO prohibiting the defendants from being present within buffer zones around reproductive health care facilities in the Western District of New York. Among other things, the TRO prohibited the defendants

> at the reproductive health care facility of Planned Parenthood of the Rochester/Syracuse Region ... from: (A) demonstrating, congregating, standing, sitting, lying down, posting or carrying signs, or being present in or on any portion of the public sidewalk within a buffer zone measured from 50 feet from the northwestern edge of the driveway entrance going towards North Street, and measured from 25 feet from the edge of the building going southeast towards Scio Street ... [and] at Genesee Hospital in Rochester, New York, from: (A) demonstrating, congregating, standing, sitting, lying down, posting or carrying signs, or being present within a buffer zone measured from fifteen feet from either edge of any driveway, walkway, or doorway entrance to such facility.

(TRO issued 4/15/99 at ¶ 3(A), ¶ 13(A)). According to the express terms of the TRO, it was enforceable "by a motion for criminal and/or civil contempt," and was to "remain in full force and effect until modified by further Order, or until resolution of plaintiffs' motion for a preliminary injunction." (TRO issued 4/15/99 at 16, 18).

On April 15, 1999, the district court also issued an order scheduling a pre-hearing conference for April 29, 1999 and a preliminary injunction hearing for May 4, 1999. The district court converted the April 29 conference into a status conference upon being advised that the parties were engaged in "serious settlement discussions." *In re Criminal Contempt Proceedings Against Crawford,* 133 F.Supp.2d 249, 253 (W.D.N.Y.2001). Crawford and Warren both appeared at the April 29 conference through counsel, although they had previously appeared *pro se*. The parties reported that four defendants had already been dismissed from the case and that the parties wished to pursue additional settlement discussions. The district court, therefore, adjourned the preliminary injunction hearing to May 25, 1999, reminding the parties that the TRO would continue to remain in effect until the completion of the hearing on the preliminary injunction. Even though all of the defendants consented to the postponement of the preliminary injunction hearing, they also objected to the continuation of the TRO.

On May 21, 1999, Warren and Crawford, and several other defendants, moved to sever the claims against them and to transfer those claims to Rochester, New York, or instead to sever the claims against them for a separate proceeding and trial before Judge Arcara. Judge Arcara denied this motion on June 16, 1999, along with all other outstanding motions. *See Operation Rescue Nat'l,* 69 F.Supp.2d at 416–19.

The hearing scheduled for May 25, 1999 was again adjourned at the request of the parties. Instead, Judge Arcara held a status conference at which he was advised that several of the defendants had agreed to be bound by the TRO and further injunctive relief by the district court, and that several other defendants would default if required to file an answer rather than agree to be bound by the TRO. Judge Arcara decided to delay the preliminary injunction hearing until the settlement and default judgments were finalized and scheduled the preliminary injunction hearing for July 28, 1999. The hearing was adjourned until August 3, 1999 due to the district court's trial calendar and a delay in finalizing the settlements and default judgments. By this time, only 23 of the 68 defendants remained in the case.[2]

The preliminary injunction hearing lasted 23 days, commencing on August 3, 1999 and ending on September 29, 1999. On August 6, 1999, during the preliminary injunction hearing, the plaintiffs applied for an order to show cause why Gerald Crawford and Michael Warren should not be held in criminal contempt for violating the April 15, 1999 TRO on May 18, May 22, and July 14, 1999. Judge Arcara held a hearing on the order to show cause on August 17, 1999, and thereafter referred the matter to the United States Attorney's Office for the Western District of New York for investigation, and, if appropriate, for prosecution.

The United States filed a "Notice of Criminal Contempt" ("Notice") against appellants Gerald Crawford and Michael Warren on March 24, 2000, pursuant to Fed.R.Crim.P. 42. The Notice charged that one or both appellants, on three separate dates, knowingly and willfully dis-

obeyed the TRO entered by Judge Arcara on April 15, 1999. Count One of the Notice charged that Warren violated the TRO on May 18, 1999 by demonstrating against abortion on a public sidewalk within fifteen feet of a driveway at the Genesee Hospital, which was within the buffer zone. Count Two charged that on May 22, 1999, both Warren and Crawford demonstrated against abortion within fifteen feet of the Genesee Hospital, within the buffer zone. Finally, Count Three charged both Warren and Crawford with demonstrating against abortion within the buffer zone at the Planned Parenthood clinic in Rochester on July 14, 1999.

Judge Arcara denied the appellants' motions to dismiss the contempt charges on February 27, 2001 and limited the appellants' maximum punishment to six months imprisonment or a $5,000 fine. Both Crawford and Warren were tried in a bench trial on June 5, 2001. *In re Criminal Contempt Proceedings Against Crawford,* 133 F.Supp.2d at 266.

On August 17, 2001, Judge Arcara found both appellants guilty of violating the April 15, 1999 TRO and sentenced Warren to three 30–day concurrent sentences and Crawford to two 30–day concurrent sentences. Both appellants' sentences were stayed pending this appeal.

## II. DISCUSSION

### A. The Criminal Contempt Convictions Are Valid

■ Rule 65(b) of the Federal Rules of Civil Procedure provides, in relevant part:

Every temporary restraining order ... shall expire by its terms within such time after entry, not to exceed 10 days,

---

**2.** Warren disputes this account of why the hearing was adjourned several times, but does not directly offer his own version of the events. The reasons for the adjournments, however, are not relevant to our decision.

as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.

■ Thus, a district court is permitted to extend a TRO for "a like period" if "good cause" is shown. The Supreme Court has interpreted the phrase "a like period" as permitting a court to extend the TRO for "up to an additional 10 days." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 440 n. 15, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).

In this case, the district court extended the April 15, 1999 TRO on April 29, 1999 until the preliminary injunction hearing was completed. The defendants contend that under Rule 65(b), the TRO could only be extended without consent through May 14, 1999. As Crawford and Warren's criminal conduct occurred after that date, their principal argument on appeal is that they cannot be held criminally liable for violating an order that did not exist. As we discuss *infra*, because this Order was issued after notice and a hearing, we find that a valid order existed and, consequently, this argument fails.[3]

In drawing this conclusion we first turn to *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). In *Sampson*, the Supreme Court held that the D.C. Circuit had appellate jurisdiction over a TRO which a district court had issued and extended indefinitely pending the appearance of a witness. In concluding that appellate jurisdiction over the TRO existed despite the fact that TROs are ordinarily unappealable, the Supreme Court stated that it would "view the order at issue here as a preliminary injunction." *Sampson*, 415 U.S. at 88, 94 S.Ct. 937.[4] The Court then proceeded to consider the preliminary injunction on its merits.

This Circuit reached a like conclusion in *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, Paa Chapter, AFL–CIO*, 306 F.2d 840 (2d Cir.1962). There, the district court extended a temporary restraining order which prohibited a strike by flight engineers "far beyond the limits prescribed by Rule 65(b)." *Pan Am.*, 306 F.2d at 842. Noting that ordinarily there can be no appeal from the issuance of a temporary restraining order, we reasoned that "the continuation of the temporary restraining order beyond the period of statutory authorization, having, as it does, the same practical effect as the issuance of a preliminary injunction, is appealable within the meaning and intent of 28 U.S.C. § 1292(a)(1)." *Pan Am.*, 306 F.2d at 843. We further concluded that "because the district judge extended the order beyond the twenty day period, . . . the temporary restraining order became an appealable preliminary injunction." *Pan Am.*, 306 F.2d at 843 n. 4. We then proceeded to consider the case on the merits.

The appellants urge that the holdings of *Sampson* and *Pan Am.* should be limited

---

**3.** We note that whether this Order would have been vulnerable to reversal on appeal had it been appealed is not the issue before us.

**4.** Additionally, in *Sampson*, the Supreme Court rejected the argument made here by appellant Warren that to consider the extended TRO a preliminary injunction permits the district court to disregard Fed.R.Civ.P. 52(a). Specifically, the *Sampson* Court found that although the district court may not have complied with Rule 52(a), to find that a TRO which was extended beyond the limits of Rule 65(b) is not reviewable on appeal would permit "an order which neglects to comply with one rule [to] be saved from the normal appellate review by its failure to comply with still another rule." *Sampson*, 415 U.S. at 86–87 n. 58, 94 S.Ct. 937.

to the proposition that TROs extended past the time limits imposed by Rule 65(b) are merely considered preliminary injunctions for purposes of appealability. This interpretation has no merit. By reviewing the orders on the merits, the *Sampson* and *Pan Am.* courts must have considered the orders as ones which continued to bind the parties. To find otherwise would result in an advisory opinion on an order that no longer existed.

The Eleventh Circuit reached the same conclusion we reach today. In *Levine v. Comcoa Ltd.,* 70 F.3d 1191 (11th Cir.1995), the Eleventh Circuit upheld a district court's finding of contempt for violation of a TRO that had been extended until the district court ruled on substantive motions. The *Levine* court rejected the appellant's argument that an order ceased to exist on the 21st day after the TRO issued, finding instead that the TRO "became a preliminary injunction when [it], as orally extended by the district court, went beyond the time permissible under Rule 65." *Levine,* 70 F.3d at 1193. The Eleventh Circuit further concluded that "[n]o good reason exists to limit th[e] rule [that a TRO extended beyond the limits of Fed.R.Civ.P. 65(b) is to be treated as a preliminary injunction] to one of appellate jurisdiction only: a preliminary injunction is a preliminary injunction." *Levine,* 70 F.3d at 1193 n. 8. We agree.[5]

Significantly, in *Sampson* and *Pan Am.,* the parties had notice of the district court's order and had the opportunity to present their opposition to it. The same is true here. Consequently, appellants' reliance on *Granny Goose* is misplaced. In *Granny Goose,* a state court issued a TRO enjoining a union from striking. Two days after the TRO was issued, the case was removed to federal court where the district court denied a motion to dissolve the TRO. The TRO was silent as to its intended duration. The union went on strike over six months later, and was subsequently held in contempt for violating the TRO. The Ninth Circuit reversed the district court's finding of contempt, and the Supreme Court affirmed, stating that "since the only orders entered were a temporary restraining order of limited duration and an order denying a motion to dissolve the temporary order, the Union had no reason to believe that a preliminary injunction of unlimited duration had been issued." *Granny Goose,* 415 U.S. at 445, 94 S.Ct. 1113. As such, the union could "reasonably assume that the order ha[d] expired within the time limits imposed by Rule 65(b)." *Granny Goose,* 415 U.S. at 445, 94 S.Ct. 1113.

Here, the appellants were on notice that an enduring order had been issued. The April 15, 1999 TRO was explicit on this point stating:

> IT IS FURTHER ORDERED that this Order shall remain in full force and effect until modified by further Order, or until resolution of plaintiffs' motion for a preliminary injunction.

---

**5.** The extension of the district court's Order in this case after notice and an opportunity to be heard functioned as a preliminary injunction for the abbreviated interval between the date of the extension and the date of a hearing on a preliminary injunction, that, if issued, would last until trial on the merits. Had Crawford and Warren timely appealed this order, they could have raised any inadequacies they perceived in the hearing afforded them as well as any other arguments they had concerning the order's validity, including the district court's failure to make findings of fact and conclusions of law. By upholding the district court's contempt order, we express no opinion on the procedures the district court followed in issuing the order on which the contempt finding was based. We merely hold that Crawford and Warren were obliged to appeal before flouting the order.

(TRO issued 4/15/99 at 18). At the subsequent status conference on April 29, 1999, the district court again made clear that the TRO was to remain in effect.

Additionally, in *Granny Goose,* the Supreme Court found important to its holding the fact that the district court, in ruling on the union's motion to dissolve the TRO, had not addressed "the various equitable factors involved in considering a preliminary injunction, but only considered the employers' argument that the case should be remanded to the state court because the right to remove had been waived ...." *Granny Goose,* 415 U.S. at 442, 94 S.Ct. 1113. In the instant case, however, the district court heard defendants' legal and factual arguments as to why the TRO should not be issued, considered several defendants' affidavits with respect to the facts, and observed photographic and video evidence at the three-day TRO hearing. Accordingly, we find that the requirement of notice and an opportunity for a hearing contemplated by *Sampson* and *Pan Am.,* but missing in *Granny Goose,* was satisfied by the hearing in this case.

Warren also argues, based on *Tekkno Labs., Inc. v. Perales,* 933 F.2d 1093 (2d Cir.1991), that the TRO cannot be deemed a preliminary injunction because Judge Arcara failed to make findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a). In *Tekkno Labs.,* we reversed the district court's injunction and a civil contempt order imposed for defying the injunction because the court lacked subject matter jurisdiction to enter the injunction. *Tekkno Labs.,* 933 F.2d at 1099. In dicta, we said that the court's failure to make findings of fact and conclusions of law would also have justified vacatur of both orders had the

district court not later issued an opinion setting forth its findings and conclusions. *Tekkno Labs.,* 933 F.2d at 1097. Putting aside the fact that the statement on which Warren relies is dicta of the clearest kind, it also has no relevance here because *Tekkno Labs.* involved civil and not criminal contempt. *See United States v. United Mine Workers,* 330 U.S. 258, 295, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ("Assuming, then, that the Norris–LaGuardia Act applied to this case and prohibited injunctive relief at the request of the United States, we would set aside the preliminary injunction of December 4 and the judgment for civil contempt; but we would, subject to any infirmities in the contempt proceedings or in the fines imposed, affirm the judgments for criminal contempt as validly punishing violations of an order then outstanding and unreversed.").

 Having found that a binding order existed as to the appellants, we conclude that they are subject to the collateral bar doctrine, which states that "a party may not challenge a district court's order by violating it." *United States v. Cutler,* 58 F.3d 825, 832 (2d Cir.1995). Under this doctrine, it is well settled that "persons subject to an injunctive order ... are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.,* 445 U.S. 375, 386, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980); *United States v. United Mine Workers,* 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (stating that "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.").[6] Furthermore, it is equal-

---

**6.** Exceptions to the collateral bar doctrine lie where the order exceeded the district court's jurisdiction or where the order was transparently invalid. *Cutler,* 58 F.3d at 832. Neither

ly well established that an order that is set aside on appeal may give rise to a charge of criminal contempt. *See United Mine Workers,* 330 U.S. at 294–95, 67 S.Ct. 677. Consequently, the fact that an order might have been subject to reversal is not a defense to a criminal contempt charge. *See Maness v. Meyers,* 419 U.S. 449, 458–59, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

The bottom line is that the appellants could have appealed the extension of the TRO. They could have asked the district court to issue an order vacating the TRO. What they could not do, however, is disobey the Order without consequences.

**B. The Convictions Do Not Offend Due Process**

■ Appellant Warren additionally challenges his conviction for criminal contempt on the ground that the TRO issued by Judge Arcara did not meet the demands of due process because it was ambiguous as to its temporal scope and its description of the prohibited conduct. These arguments are without merit. The TRO itself could not have been any clearer with respect to its intended duration, as it explicitly stated that it was to "remain in full force and effect until modified by further Order, or until resolution of plaintiffs' motion for preliminary injunction." (TRO issued 4/15/99 at 18).

Nor did the inclusion of the so-called First Amendment clause create any confusion regarding what conduct was prohibited. That clause read:

> IT IS FURTHER ORDERED that nothing in this Order shall be construed to limit defendants and those acting in concert with them from exercising their legitimate rights under the First Amendment of the United States Constitution.

(TRO issued 4/15/99 at 16). While the clause may have been unnecessary, it did not make the Order's directives any less clear.[7] We therefore find that the appellants' convictions for violating the TRO do not offend due process.

**III. CONCLUSION**

We have considered all of appellants' arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.

is available to appellants here, as the district court clearly had jurisdiction and the transparently invalid exception is only available to a party who has either made a good faith effort to obtain emergency relief from the appellate court "or who show[s] compelling circumstances ... excusing the decision not to seek some kind of emergency relief." *Cutler,* 58 F.3d at 832.

7. Appellant Warren relies on *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), for his contention that the so-called First Amendment clause ren-

dered the Order ambiguous. In *Lanier,* the challenged statute, instead of describing the conduct it prohibited, criminalized the deprivation of "rights protected by the Constitution or laws of the United States." *Lanier,* 520 U.S. at 264, 117 S.Ct. 1219. The question in *Lanier* was whether the defendant was afforded fair warning that the right to be free from sexual assault was a constitutional right and thus prohibited by the statute at issue. *Lanier* is not this case, as the Order itself specifically and unambiguously defined the prohibited conduct.