PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 95-4391
_____

D. C. Docket No. 94-8256-CIV-SH

DAVID LEVINE,

Receiver-Appellee,

SECURITIES EXCHANGE COMMISSION,

Plaintiff-Appellee,

versus

COMCOA LTD., a/k/a Comcoa Ltd., THOMAS W.
BERGER,

Defendants,

J. B. GROSSMAN, Law Practice,

Movant-Appellant,

SUN-SENTINEL COMPANY, MOBITEL SERVICES CORP.,
a Delaware Corporation, et al.,

Claimants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(December 1, 1995)**

Before EDMONDSON, Circuit Judge, and HILL, Senior Circuit Judge,
and MILLS*, District Judge.

_____

* Honorable Richard Mills, U.S. District Judge for the Central
  District of Illinois, sitting by designation.

EDMONDSON, Circuit Judge:

Law Practice of J.B. Grossman, P.A., appeals the district court's finding of contempt for its transfer of funds from the trust account of its client, Comcoa Ltd. ("Comcoa"), to the law firm's operating account in violation of a court order. We affirm.

Before January 1994, Comcoa retained J.B. Grossman as counsel.[1] In mid-January 1994, Grossman told Comcoa to establish a large retainer fee to assure Grossman's availability in the event of an asset-freezing action. This retainer was placed in a trust account maintained by Grossman on behalf of Comcoa. Before April 1994, the Division of Enforcement of the Securities and Exchange Commission ("Division") began an informal inquiry into the business activities of Comcoa.

On 5 May 1994, the Division filed an <u>ex</u> <u>parte</u> Motion for Order to Show Cause Why a Preliminary Injunction Should Not Be Granted, Temporary Restraining Order ("TRO"), Order Freezing Assets, Order Appointing Receiver, Order for an Accounting, Order Prohibiting Destruction of Documents and an Order Expediting Discovery. On 6 May 1994, at 9:25 AM, a United States District Judge entered an order, among other things, granting a TRO and freezing Comcoa's assets, appointing a Receiver, and notifying the parties of a

---

[1] While it is appellant Law Practice of J.B. Grossman, P.A. which was held in contempt below, the law firm's sole involvement in this case was through the actions of J.B. Grossman, a lawyer. As such, this opinion will describe the behavior in this case as being that of Mr. Grossman rather than that of the law firm.

hearing on 16 May to consider a preliminary injunction.[2]

On 11 May Comcoa filed, among other things, an Emergency Motion to Vacate the TRO, a Motion to Dismiss for Lack of Subject Matter Jurisdiction and a Motion for Preliminary Hearing on Defendants' Motion to Dismiss.

On 16 and 17 May the district court did hold a preliminary injunction hearing and also heard Defendants on their Motion to Dismiss for Lack of Subject Matter Jurisdiction. Grossman was attorney of record for Comcoa at this hearing. Over the two days, the district judge heard argument from counsel and received testimony from seven witnesses; the hearing was completed.[3] At the end of the hearing on 17 May, the district court told both parties that it was extending the 6 May order until the court ruled on the substantive motions by Defendants. The district court said the order would be extended in all respects and specifically said the order included the asset freeze. The district court then asked if either party had anything further or any questions. Grossman replied, "No, sir."

On 6 June 1994, Grossman called the district court to find out if an order had been issued. At first, Grossman was told a preliminary injunction had been issued; but later the district court's assistant said a preliminary injunction had not been

_____

[2]  The May 6 order stated that the hearing on May 16 was to show cause "why a Preliminary Injunction ... should not be granted ...."

[3] Mr. Grossman makes no contention that he was unable at this hearing to set forth fully the reasons for which he and Comcoa believed no preliminary injunction should issue.

issued. Grossman considered the court's order to have expired. And he, on 6 June, transferred from Comcoa's trust account about $92,000 of the retainer funds into his law firm's operating account.[4] About this same time, he filed for Comcoa an Emergency Motion for Release of Assets, based on the expiration of the TRO.[5] Also on 7 June, the district court entered an Order of Preliminary Injunction nunc pro tunc to June 3, 1994; and, the district court denied Defendants' Emergency Motion.

In August 1994, the Division filed a Motion for an Order to Show Cause to hold Grossman in contempt for violating the district court orders when he transferred the retainer funds. The district court entered an order holding Grossman in contempt of court for his transferring of the funds into his own account. He now appeals this ruling.

Rule 65 of the Federal Rules of Civil Procedure says that a

---

[4] The order stated that Comcoa and their "attorneys ... are [] restrained from, directly or indirectly, transferring ... any assets or property owned by, controlled by, or in the possession of [Comcoa]". In the contempt proceeding the court below concluded that the asset freeze extended to the trust account, and this determination is not in dispute. Never does Grossman contend that he was unaware that the order of the court, if still in force, prohibited this conduct.

[5] Some confusion exists on the precise sequence of events on June 6 and 7. The district court appears to have found that Grossman first filed the motion for release of funds and then -- before the motion could be decided -- transferred the money. Grossman's initial brief says that he transferred the funds on 6 June and filed the motion for release of assets the next day. His reply brief says that the motion was filed 6 June, the same day that he transferred the funds, but later in the day. And, the docket sheet indicates the motion was not filed until 7 June. In any event, what is undisputed is that Grossman's transfer of funds was a unilateral act done without the approval of any court.

4

TRO can last only 10 days, unless extended, and cannot be extended beyond 20 days without the consent of the restrained party.[6] Grossman says that he never consented to an extension; and for the sake of our discussion, we accept that he did not consent.

The Supreme Court has said a TRO that is continued beyond the time permissible under Rule 65 should be treated as a preliminary injunction. See Sampson v. Murray 94 S.Ct. 937, 951 (1974) (stating "[w]here an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified"). This treatment is especially appropriate where, as in this case, there has been notice to the parties, a full hearing on a preliminary injunction, and then a stated and clear decision from the bench to extend the terms of the restraining order indefinitely, that is, until the court notified the parties otherwise.[7]

---

[6] The parties argue whether the initial 10 days and the 20 day extension should be calculated by excluding weekends and holidays. This argument is largely irrelevant because even if we take the calculation which excludes weekends and holidays, the TRO would expire at 9:25 AM on June 6. And, because the district court did not enter the written preliminary injunction order until June 7 (although it was entered nunc pro tunc to June 3), the TRO would have expired unless consent were given. We do note that even under the calendar day approach, continuing the hearing into the second day constituted a for- cause extension of the initial 10 day period.

[7] We accept that, where there has been no notice to the parties and no hearing on the various factors involved in considering a preliminary injunction, a TRO continued past the Rule 65 limit falls of its own weight. See Granny Goose v. Brotherhood of Teamsters & Auto Truck Drivers, 94 S.Ct. 1113 (1974); Hudson v. Barr, 3 F.3d 970 (10th Cir. 1993). In Granny Goose, the district court "did not indicate that it was undertaking a hearing on a

5

Very likely, Grossman's client, Comcoa along with its agents and attorneys, was under a preliminary injunction once the judge spoke at the end of the hearing; but we need not go that far. If the TRO had not become a preliminary injunction before, it became a preliminary injunction when the TRO, as orally extended by the district court, went beyond the time permissible under Rule 65. Thus, the proper course of conduct for Grossman was to treat the TRO as an erroneously granted preliminary injunction and to appeal.[8] See Clements Wire & Mfg. Co. v. NLRB, 589 F.2d 894, 896 (5th Cir. 1979).

We believe the instances when lawyers can be told by the district court in no uncertain terms not to do "X" and, yet, the lawyer can go on to do "X" with impunity are (and ought to be) few

_____

preliminary injunction." Granny Goose, 94 S.Ct. at 1125. And, neither party made an attempt to present its position on whether a preliminary injunction should issue. Id.

[8]   That a hearing on a preliminary injunction had been held and that appellate review was, therefore, available under Sampson, makes this case materially different from Granny Goose. Even in Pan American World Airways, Inc. v. Flight Engineers' Int'l Assn., 306 F.2d 840, 842 (2d Cir. 1962), the Second Circuit treated a TRO extended following the commencement of a hearing on the merits as a preliminary injunction for purposes of appeal. No good reason exists to limit this rule to one of appellate jurisdiction only: a preliminary injunction is a preliminary injunction.
Two concerns about TROs are reflected in the case law and in Rule 65.  First, restrained parties often have no opportunity for a hearing and may not know precisely what conduct is prohibited. Second, a restrained party may not obtain appellate review of a TRO.
Our holding respects both these concerns; Grossman and Grossman's client had the opportunity to contest the preliminary injunction (and had precise notice of the enjoined conduct) and also could have obtained appellate review of the injunction.

and far between, especially where the appellate courts -- as in this case -- are open to the lawyer to settle the matter in an orderly way, but the lawyer pursues no appeal. In these circumstances, for Grossman just to disregard the district court's clear order, based on his personal belief that it was invalid, was not merely bold; it was bad. We conclude his conduct warrants a determination of contempt.[9]  The district court was within its discretion to hold Grossman in contempt of court for violating its order.

The order of contempt against the Law Practice of J.B. Grossman, P.A., is AFFIRMED.

---

[9]  Although we decide this case under Rule 65, we do not decide that all of the district courts' powers to give binding orders to a lawyer and all of a lawyer's legal duties to obey the orders of a court with subject-matter jurisdiction over the controversy in which the lawyer appears as counsel of record flow from the Federal Rules of Civil Procedure only.

We are heartsick when we observe that Mr. Grossman, an officer of the United States' Courts, acted personally and directly in disobeying the straightforward instruction of a United States District Judge and did so just for money, his fee.

This case is not one in which a lawyer's client acted, and because the lawyer did not stop his client, the lawyer is facing contempt.  Mr. Grossman, himself, acted contrary to plain instructions given to him when he was face-to-face with the court. In such circumstances, the power of district courts to discipline their officers may possibly be considerably broader-based than that granted by Rule 65 or even the Federal Rules of Civil Procedure generally. Put differently, whether or not the client Comcoa was still validly restrained about its funds, perhaps Mr. Grossman, as an officer of the court, remained under a valid restraint. But given the way this controversy was decided by the district court and has been briefed and argued to us, we will pass over the question of Mr. Grossman's professional responsibilities and of the district court's inherent powers to supervise and to discipline its subordinate officers.