**In re CRIMINAL CONTEMPT PROCEEDINGS AGAINST Gerald CRAWFORD and Michael Warren**

No. CR. 00–029A.

United States District Court,
W.D. New York.

Feb. 27, 2001.

See, also, 69 F. Supp.2d 408.

Paul J. Campana, Assistant U.S. Attorney, Buffalo, NY, for the Government.

Kimberly Schechter, Assistant Federal Public Defender, Buffalo, NY, for Defendant Crawford.

Bryon J. Brown, AFA Center for Law & Policy, Tupelo, MS, for Defendant Warren.

James F. Blumstein, Nashville, TN (H. Lee Barfield II, Bass, Berry & Sims PLC, and G. Thomas Nebel, on the briefs), for Petitioner.

Barbara D. Underwood, Deputy Solicitor General (Seth P. Waxman, Sol. Gen., Bill Lann Lee, Acting Asst. Atty. Gen., Irving L. Gornstein, Asst. to Sol. Gen., and Dennis J. Dimsey and Gregory B. Friel, Dept. of Justice attys., on the briefs), for U.S. as Amicus curiae.

Richard L. Colbert, Nashville, TN (Charles Hampton White, and Cornelius & Collins LLP, on the briefs), for Respondents.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

On March 24, 2000, the government commenced the instant criminal contempt proceeding against defendants Gerald Crawford and Michael Warren by the filing of a "Notice of Criminal Contempt," pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure. The Notice charges that on three dates in 1999, defendants violated a temporary restraining order ("TRO") issued by this Court on April 15, 1999, in the underlying civil action, *People of the State of New York, by Eliot Spitzer, Attorney General of the State of New York, et al. v. Operation Rescue National, et al.*, 69 F.Supp.2d 408 (W.D.N.Y. 1999) ("*Spitzer*"), in violation of 18 U.S.C. § 401(3). The Court's TRO prohibited defendants from engaging in certain conduct outside reproductive health care facilities located within the District. The Notice of Criminal Contempt alleges that defendant Warren violated the TRO on May 18, 1999, and that both defendants Warren and Crawford violated it on May 22 and July 14, 1999.

The case was initially referred to Magistrate Judge Carol E. Heckman, pursuant to Rule 21.1 of the Local Rules of Criminal Procedure for the United States District Court for the Western District of New York and 28 U.S.C. § 636(b)(1). Upon Magistrate Judge Heckman's retirement from the Bench on May 1, 2000, all of her cases were referred to Magistrate Judge H. Kenneth Schroeder, Jr.

On July 5, 2000, defendants filed a joint motion to dismiss the criminal contempt proceedings on two grounds: (1) that pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, the TRO expired before the dates the defendants are alleged to have violated it; and (2) that defendants' actions on the dates in question were protected by the First Amendment. Defendants also moved for change of venue and for recusal of this Court. On July 20, 2000, the government filed a response opposing defendants' motions.

On September 29, 2000, Magistrate Judge Schroeder filed a Report and Recommendation, recommending that the defendants' motion to dismiss the criminal contempt proceedings be granted. Magistrate Judge Schroeder found that the Court's April 15, 1999 TRO expired, pursuant to Rule 65(b), on May 14, 1999. Thus,

according to Magistrate Judge Schroeder, because the TRO was no longer in existence on the dates the defendants are alleged to have violated it, they cannot be held in criminal contempt. Magistrate Judge Schroeder did not address defendants' First Amendment argument. In light of his recommendation that the contempt action be dismissed, Magistrate Judge Schroeder denied defendants' motions for change of venue and recusal, without prejudice.

On October 19, 2000, the government filed objections to the Magistrate Judge's Report and Recommendation. Also on October 19th, the plaintiffs in *Spitzer* moved to appear as *amici curiae* in this action. Plaintiffs filed *amici* briefs on October 26, 2000. On November 6, 2000, defendants filed a joint opposition to plaintiffs' requests to appear as *amici*. On November 8, 2000, the Court granted plaintiffs' motions to appear as *amici*. Defendants filed responses to the government's objections and the *amici* briefs on December 8 and 11, 2000. The government and the *amici* filed reply briefs on January 8, 2001.

Oral argument on the objections was held on January 18, 2001. At oral argument, defendants made several oral motions requesting relief. First, defendants moved the Court to recuse itself from the case. Next, defendants moved for dismissal of the case because *amici* status was improperly granted to the plaintiffs in the *Spitzer* action. In the alternative, defendants requested that both the *amici* and the United States Attorney be disqualified from the case.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation in this case, and after reviewing the submissions and

hearing argument from the parties, the Court rejects the proposed findings and recommendation of the Magistrate Judge and denies defendants' motion to dismiss the criminal contempt proceeding. The Court also (1) denies defendants' motions to disqualify the *amici* and the United States Attorney, (2) denies defendants' motion for recusal, and (3) denies defendants' motion for change of venue.

## BACKGROUND

On March 22, 1999, the plaintiffs in the *Spitzer* action, who include the People of the State of New York, by Eliot Spitzer, Attorney General of the State of New York, several medical facilities and doctors that provide reproductive health care services, and organizations that advocate abortion rights, commenced that action by filing a complaint seeking relief under the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248, and New York law.[1] Along with the complaint, the plaintiffs filed a motion for a TRO and a preliminary injunction, asking the Court to establish limited buffer zones around reproductive health care facilities located within this District and otherwise preventing the 68 named-defendants from engaging in illegal activities designed to disrupt access to those facilities. The defendants in the instant criminal contempt proceeding, Gerald Crawford and Michael Warren, are named-defendants in the *Spitzer* action.

Practically speaking, the *Spitzer* action is simply a continuation of a previous civil action filed in this Court in 1990. *See Pro–Choice Network of Western New York v. Project Rescue Western New York,* 799 F.Supp. 1417 (W.D.N.Y.1992), *aff'd,* 67 F.3d 377 (2d Cir.1995), *aff'd in relevant part, sub nom., Schenck v. Pro–Choice Network of Western New York,* 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) (*"Pro–Choice "*). Of the 68 named-defen-

---

1. There is a detailed discussion of the background of the *Spitzer* case in the Court's Decision and Order, filed July 26, 2000, regarding the preliminary injunction in that case. The

Court hereby incorporates by reference that Decision and Order and assumes familiarity therewith.

dants in the *Spitzer* action, fourteen of them, including defendant Crawford, were also named-defendants in the *Pro–Choice* case.

On March 24, 1999, the Court granted plaintiffs' application in the *Spitzer* case for an expedited hearing on their motion for a TRO and scheduled a hearing for April 8, 1999. The Court gave defendants until April 6, 1999 to respond to the TRO motion.

On April 6 and 7, 1999, defendants submitted various opposition papers and memoranda of law in response to the plaintiffs' TRO motion. Most of the defendants submitted affidavits contesting the factual allegations made against them in the complaint and in plaintiffs' papers.[2] Many of the defendants also moved for dismissal of the complaint on various grounds, including lack of personal jurisdiction and improper service of process.

On April 8, 1999, the Court commenced the TRO hearing. The hearing continued over three days, April 8th, 9th and 12th. Most of the defendants were represented at the hearing by counsel, but several defendants either appeared *pro se* (including defendants Crawford and Warren) or made no appearance at all. At the hearing, defendants vigorously contested plaintiffs' TRO motion on both factual and legal grounds. As stated, several of the defendants submitted affidavits denying the factual allegations contained in plaintiffs' complaint and motion papers. The parties also presented evidence in the form of photographic and video evidence. One of the named-defendants, Renee Riddle, testified on her own behalf regarding her

intent not to appear at any upcoming anti-abortion demonstrations. Her counsel moved orally for her dismissal and the Court reserved decision. At the close of the proceedings on April 12, 1999, the Court gave the parties until the close of business on April 13, 1999 to file any supplemental papers in support of their respective positions, at which time the record would be deemed closed. During the hearing, the Court also set a briefing schedule for resolution of the various motions to dismiss filed by the defendants.

The parties filed additional affidavits on April 13 and 14, 1999. Many of these affidavits were submitted on behalf of defendants and again disputed the factual allegations contained in the complaint and in plaintiffs' moving papers.

On April 15, 1999, the Court issued a TRO, enjoining defendants from engaging in certain conduct outside reproductive health care facilities located within the District. The TRO stated that it could be enforced by a motion for either criminal or civil contempt. The last paragraph of the TRO stated:

> IT. IS FURTHER ORDERED that this Order shall remain in full force and effect until modified by further Order, or until resolution of plaintiffs' motion for a preliminary injunction.

The Court included this language in the TRO regarding its duration because the Court was aware, at the time it issued the TRO, that based on the large number of defendants in the case, the numerous disputed issues of fact raised in the parties' affidavits that would have to be resolved at the preliminary injunction hearing,[3] the

---

**2.** Some of the affidavits submitted by the defendants were received by the Court prior to or during the TRO hearing, but were not actually filed until after the hearing.

**3.** *See Davis v. New York City Housing Auth.,* 166 F.3d 432, 437–38 (2d Cir.1999) ("[W]hile affidavits may be considered on a preliminary injunction motion, motions for preliminary injunction should not be resolved on the basis of affidavits that evince disputed issues of fact. When a factual issue is disputed, oral

testimony is preferable to affidavits.") (citations omitted); *Forts v. Ward,* 566 F.2d 849, 851 (2d Cir.1977) ("Generally, of course, a judge should not resolve a factual dispute on affidavits or depositions, for then he is merely showing a preference for 'one piece of paper to another.' This is particularly so when the judge without holding an evidentiary hearing, resolves the bitterly disputed facts in favor of the party who has the burden of establishing his right to preliminary relief.") (citations

necessary resolution of the pending motions to dismiss, the Court's experience at the TRO hearing, the Court's calendar,[4] and the Court's past experience in the *Pro–Choice* case, the preliminary injunction hearing would be lengthy and the Court probably would not be able to complete the hearing and resolve the motion for preliminary injunction within the time limitations in Rule 65(b). Also on April 15th, the Court issued an Order setting the preliminary injunction hearing to commence on May 4, 1999. The Court set a pre-hearing conference for April 29, 1999.

Prior to the pre-hearing conference scheduled for April 29, 1999, the Court was contacted by counsel for the parties, who informed the Court that they were engaged in serious settlement discussions and that there was a possibility that the case could settle. The Court therefore converted the pre-hearing conference for April 29th into a status conference.

At the April 29th status conference, defendants Warren and Crawford, who were previously proceeding *pro se,* appeared for the first time through counsel. Counsel for the parties advised the Court that the parties had entered into settlement discussions and wished to continue those discussions rather than starting the preliminary injunction hearing. In that regard, the plaintiffs informed the Court that they had already agreed to dismissal of four of the defendants. In order to accommodate the parties' settlement discussions, the Court adjourned the commencement of the preliminary injunction hearing to May 25, 1999. The Court reiterated that the TRO would continue to remain in effect until the preliminary injunction hearing was completed. Even though all the defendants agreed to postponement of the preliminary injunction hearing and the continuation of the settlement discussions, they all objected to the continuation of the TRO.

On May 21, 1999, several defendants, including defendants Crawford and Warren, moved to sever the claims against them and to have those claims transferred to a judge in Rochester, New York or, in the alternative, to sever the claims against them for a separate proceeding and trial before this Court.

Prior to the scheduled hearing on May 25, 1999, the Court was contacted by counsel and told that a possible settlement had been reached by some of the defendants. Accordingly, the Court did not commence the hearing on May 25th, but instead held a status conference. At the conference, counsel informed the Court that several of the defendants had agreed to settle the case and be bound by the TRO and any further injunctive relief granted by the Court. Counsel also indicated that a number of other defendants, while they did not wish to contest the case, did not want to enter into any type of settlement or stipulation, as a matter of principle. Counsel for those defendants informed the Court that they would simply default if required to file an answer. Because it appeared that a substantial number of the defendants were going to either settle or default, thereby reducing the amount of resources necessary for a preliminary injunction hearing, the Court decided to delay the preliminary injunction hearing until the settlement and default judgments could be finalized. The Court stated:

> It's my understanding that a number of the defendants may be defaulting, a number of the defendants may be agreeing to stipulation, a number of the defendants may be whatever. And it would seem that their involvement as far as any future hearings are concerned, at least many of the defendants, may be unnecessary. But it's going to take some time to work all this out. And it seems to me that would be a waste of

omitted); *Dopp v. Franklin Nat'l Bank,* 461 F.2d 873, 879 (2d Cir.1972).

4. The Court conducted a criminal trial from April 14, 1999 to April 22, 1999 and had several other trials scheduled.

judicial resources to be conducting hearings when many of the defendants will ultimately either be defaulting, or they will be stipulating to the injunction. It would be wasting the Court's time as well as attorney time, and would serve no useful purpose.

*Spitzer,* Item No. 184 at 3–4. The Court then tried to schedule a new date for the preliminary injunction hearing that was convenient to all the parties. There was much disagreement among counsel, however, as to when the hearing should begin. Plaintiffs and some of the defendants wanted the hearing to start immediately after the issues regarding the settling and defaulting defendants were finalized, while other defendants wanted it adjourned until September or even the following January. The Court then set the date of July 28, 1999 for the hearing. The Court also established a schedule for finalizing the settlement discussions and any default judgments, and set a briefing schedule for resolution of any outstanding motions. The extension of the TRO was not discussed at the May 28th status conference.

On June 16, 1999, the Court issued a 24–page Decision and Order denying all of defendants' outstanding motions. *See People of the State of N.Y. ex rel. Spitzer v. Operation Rescue Nat., 69 F.Supp.2d 408 (W.D.N.Y.1999).*

Due to a civil jury trial that went longer than expected and a delay in finalizing some of the settlements and resolving all the default judgments, the preliminary injunction hearing was postponed from July 28, 1999 to August 3, 1999. By the time the hearing started on August 3, 1999, 45 of the original 68 defendants had either settled, defaulted or been dismissed from the case.

The preliminary injunction hearing lasted 23 days and spanned from August 3 through September 29, 1999. The Court heard testimony from 40 witnesses.

On August 6, 1999, during the preliminary injunction hearing, the plaintiffs made an application for an Order to Show Cause as to why defendants Crawford and Warren should not be held in criminal and civil contempt for violating the Court's April 15, 1999 TRO for acts they allegedly engaged in on May 18, May 22 and July 14, 1999. On August 12, 1999, the Court signed the Order to Show Cause, directing that those defendants appear on August 17, 1999. On August 17, 1999, the Court held a hearing on the Order to Show Cause and referred the matter to the United States Attorney's Office for the Western District of New York for investigation and possible prosecution for criminal contempt.

At the conclusion of the preliminary injunction hearing, the Court set a briefing schedule for submission by the parties of proposed findings of fact and conclusions of law. The Court required that a transcript of the hearing be prepared and that the parties' proposed findings of fact cite to specific transcript pages. The briefing schedule was extended several times pursuant to requests of the parties. On July 26, 2000, the Court issued a 125–page Decision and Order outlining its findings of facts and conclusions of law and granting plaintiffs' motion for a preliminary injunction.

## DISCUSSION

### I. *An Enforceable Order Existed*

■ Defendants contend that the TRO issued by the Court on April 15, 1999, and extended on April 29, 1999, automatically expired on May 14, 1999, pursuant to the 20–day time limit for TRO's contained in Rule 65(b).[5] Thus, defen-

---

5. Rule 65(b) provides:
   Every temporary restraining order provided without notice ... shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.

dants argue, because the TRO expired as a matter of law before the dates of their alleged violations, the criminal contempt charges against them must be dismissed. In other words, they could not have violated an order that had ceased to exist.

In support of their position, defendants rely primarily upon the Supreme Court's decision in *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local No. 70 of Alameda County,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). In *Granny Goose,* a state court issued a TRO to enjoin a local union from striking. Two days later, the case was removed to federal court. The union moved to dissolve the TRO. After a hearing, the district court denied the union's motion. The union went on strike some months later. The district court held the union in contempt for violating the state court TRO, which it held was still in effect at the time of the strike. The Ninth Circuit reversed and the Supreme Court affirmed the appellate court.

In reaching its decision, the Supreme Court first held that the federal statute which provides that all state court injunctions remain in full force and effect after removal until dissolved or modified by the district court, 28 U.S.C. § 1450, did not override the time limitations for TRO's in Rule 65(b). Thus, the Court explained, once a case is removed to federal court, any TRO issued by the state court remains in effect no longer than the time limitations in Rule 65(b). The Court then proceeded to apply the Rule 65(b) time limitations to the state court TRO at issue. The Court found that because the TRO was silent on its face as to its duration and the district court had neither extended the TRO or supplanted it with a preliminary injunction after the case was removed, the TRO expired after ten days pursuant to Rule 65(b), long before the alleged contemptuous conduct. Thus, the Court concluded, the union did not violate the TRO when it resumed its strike because the

TRO was no longer in effect at that time. The Court stated:

> [O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits ... It would be inconsistent with this basic principle to countenance procedures whereby parties against whom an injunction is directed are left to guess about its intended duration. Rule 65(b) provides that temporary restraining orders expire by their own terms within 10 days of their issuance. Where a court intends to supplant such an order with a preliminary injunction of unlimited duration pending a final decision on the merits or further order of the court, it should issue an order clearly saying so. And where it has not done so, a party against whom a temporary restraining order has issued may reasonably assume that the order has expired within the time limits imposed by Rule 65(b). Here, since the only orders entered were a temporary restraining order of limited duration and an order denying a motion to dissolve the temporary order, the Union had no reason to believe that a preliminary injunction of unlimited duration had been issued. Since neither § 1450 nor the District Court's denial of the Union's motion to dissolve the temporary restraining order effectively converted that order into a preliminary injunction, no order was in effect on [the date of the strike], over six months after the temporary restraining order was issued. There being no order to violate, the District Court erred in holding the Union in contempt ....

*Id.* at 444–45 (footnotes omitted).

Defendants' reliance on *Granny Goose* is misplaced as they ignore a key factual, and legally significant, distinction between that case and this case. In *Granny Goose,* the TRO at issue was silent on its face as to its intended duration and the district court never ordered that it be extended beyond

the time limits in Rule 65(b). Here, in contrast, the Court expressly extended the TRO beyond the 20–day time period in Rule 65(b). The Court stated clearly and unequivocally in the TRO that it was to remain in effect until resolution of the plaintiffs' motion for preliminary injunction. The Court reiterated this extension at the April 29, 1999 status conference. This is not a case like *Granny Goose* where the party being enjoined was left to guess at the intended duration of the TRO.[6] The Supreme Court and the appellate courts have held that where, as here, a district court expressly extends a TRO issued after notice and a hearing beyond the statutory 20–day limit in Rule 65(b), the TRO does not cease to exist after the 20 days have expired, but instead becomes an enforceable preliminary injunction subject to appellate review.[7] *See, e.g., Sampson v. Murray*, 415 U.S. 61, 87–88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Levine v. Comcoa, Ltd.*, 70 F.3d 1191 (11th Cir. 1995), *cert. denied*, 519 U.S. 809, 117 S.Ct. 53, 136 L.Ed.2d 16 (1996); *Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL–CIO*, 306 F.2d 840, 843 (2d Cir.1962).

In *Sampson*, which was decided only a few weeks before *Granny Goose*, a government employee sought a TRO against her dismissal from employment as a probationary employee. The district court granted the TRO. Later, after an adversary hearing at which the government declined to produce the discharging official as a witness to testify as to the reasons for the dismissal, the district court ordered the TRO continued until the witness appeared. The government appealed.

In considering the issue of appellate jurisdiction over the TRO, the Supreme Court wrote:

> A district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, would have virtually unlimited authority over the parties in an injunctive proceeding. In this case, where an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified. Therefore, we view the order at issue here as a preliminary injunction.

*Sampson*, 415 U.S. at 86–88, 94 S.Ct. 937. The Court then went on to examine the merits of the case to determine whether a preliminary injunction should have been granted. Thus, under *Sampson*, a TRO issued after notice and a hearing, and extended past the time limits in Rule 65(b) becomes an appealable preliminary injunction.

The Supreme Court's decision in *Sampson* was presaged by the Second Circuit's decision in *Pan Am.* In *Pan Am.*, the district court issued a TRO enjoining the defendant union from striking. The district court continued the TRO from time to time past the 20–day limitation period in Rule 65(b). The union appealed.

---

**6.** Defendants' reliance on *Republic of Philippines v. Marcos*, 1987 WL 28670 (S.D.N.Y. Dec. 14, 1987), is also misplaced because the TRO in that case was not extended to any date beyond the Rule 65(b) time periods. Instead, the issue in that case was the proper calculation of the ten-day periods under the Rule. Because there were ambiguities regarding the proper calculation of effective period of the TRO, the district court declined to hold the defendants in contempt.

**7.** Some of the *amici* argue that the time limits contained in Rule 65(b) apply only to *ex parte* TROs, and because the TRO in this case was issued after notice and a hearing, the time limits in the Rule simply do not apply here. Although Rule 65(b), *on its face*, refers only to *ex parte* TROs, the Second Circuit has held that the time limits in the Rule apply even if the TRO was issued upon notice and a hearing. *See Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL–CIO*, 306 F.2d 840, 842 (2d Cir.1962).

In considering the issue of the appealability of the TRO, the Second Circuit stated:

> There is no statutory authority for the indefinite, successive extensions of temporary restraining orders ... Appellee argues that the time limits set forth in Rule 65(b) ... are applicable only to situations where the temporary restraining order was issued *ex parte* ... The fact that notice is given and a hearing held cannot serve to extend indefinitely beyond the period limited by the Rule the time during which a temporary re-straining order remains effective. The statute contemplates that notice and a hearing shall result in an appropriate adjudication, i.e. the issuance or denial of a preliminary injunction, not an extension of the temporary stay. The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction. Such an order is necessarily limited to a very brief period because what may later prove to be a right of the party who is restrained is suspended before even a tentative adjudication as to that right has been had.... It is because the remedy is so drastic and may have such adverse consequences that the authority to issue temporary restraining orders is carefully hedged in Rule 65(b) by protective provisions. And the most important of these protected provisions is the limitation on the time during which such an order can continue to be effective. It is for the same reason, the possibility of drastic consequences which cannot later be corrected, that an exception is made to the final judgment rule to permit review of preliminary injunctions. 28 U.S.C. § 1292(a)(1). To deny review of an order that has all the potential danger of a preliminary injunction in terms of duration, because it is issued without a preliminary adjudication of the basic rights involved would completely defeat the purpose of this provision. We hold, therefore, that the continuation of the temporary restraining order beyond the period of statutory authorization, having, as it does, the same practical effect as the issuance of a preliminary injunction, is appealable within the meaning and intent of 28 U.S.C. § 1292(a)(1).

*Pan Am.*, 306 F.2d at 842–43 (citations and footnotes omitted). As in *Sampson*, the Second Circuit then went on to examine the merits of the injunction that was issued by the district court.

The distinction between the situation present in *Sampson* (and this case) and the situation present in *Granny Goose* was also presaged by the Second Circuit in *Pan Am.* In footnote 4 of *Pan Am.*, the Second Circuit distinguished its case from certain other cases where appellate courts had refused to review TROs. *Id.* at 843 n. 4. The Second Circuit explained that in those other cases, the courts found that the TROs at issue had expired by virtue of the Rule 65(b) limitations and, therefore, because there was no existing order to review, the appeals were dismissed as moot. In contrast, in *Pan Am.*, the district court had extended the TRO beyond the 20–day period, thus converting the TRO into an appealable preliminary injunction.

Thus, under *Sampson* and *Pan Am.*, where a district court issues a TRO following notice and a hearing, and then extends the TRO beyond the 20–day limitation in Rule 65(b), the TRO does not cease to exist after 20 days, but instead becomes an appealable preliminary injunction.

Defendants argue that the conversion of an indefinitely extended TRO into a preliminary injunction under *Sampson* and *Pan Am.* is only for purposes of appeal, conferring jurisdiction on the appellate court for the sole purpose of voiding the invalidly extended TRO. This argument is inconsistent, however, with *Sampson* and *Pan Am.* In those cases, after holding that the extended TRO converted into a preliminary injunction and was therefore appeal-

able, the Courts went on to address the substantive merits of the preliminary injunctions at issue. By reviewing the merits, the Courts implicitly held that the TRO turned preliminary injunction was still a valid restraining order.[8] Otherwise, the review on the merits would have amounted to nothing more than an advisory opinion regarding an order that no longer existed.

The bottom line is that a preliminary injunction is a preliminary injunction; if it "exists" for purposes of appeal, then it also "exists" for purposes of having to be obeyed. It would make no legal or rational sense to have an injunction that is appealable, but at the same time unenforceable. because it no longer exists. Under Sampson and Pan Am., a TRO issued after notice and a hearing and extended beyond 20 days becomes a preliminary injunction. As such, it continues to command adherence until it is modified or reversed through an orderly judicial process.

The case most on point with the instant case is not Granny Goose, but the Eleventh Circuit's decision in Levine, 70 F.3d at 1191. In Levine, the Securities and Exchange Commission (the "SEC") obtained an ex parte TRO that froze the defendant corporation's assets. The district court then commenced two days of hearings on the SEC's motion for a preliminary injunction, at which attorney Grossman appeared for the defendant corporation. At the hearing, the district court informed the parties that its TRO would be extended until it ruled on defense motions and the motion for a preliminary injunction. Grossman declined to consent to the extension of the TRO. Despite the district court's extension of the TRO, on the 21th day after its issuance, Grossman decided to treat the TRO as having expired and transferred the defendant corporation's assets into his law firm account in direct contravention of the TRO. He was held in contempt and appealed.

Grossman's grounds for appeal were exactly the same as those asserted by the defendants in this case. He relied on Granny Goose to argue that despite the district court's extension of the TRO, it automatically expired after 20 days under Rule 65(b). Thus, according to Grossman, no order existed for him to violate.

The Eleventh Circuit rejected Grossman's argument. The court found that because there had been a hearing on the preliminary injunction motion and appellate review of the extended TRO was therefore available under Sampson, the case before it was "materially different from Granny Goose." Id. at 1193 n. 8. The court therefore followed Sampson's holding that a TRO extended beyond the Rule 65 time limits should be treated as a preliminary injunction. Id. at 1193. The court saw "no good reason" to limit the Sampson rule-that an extended TRO becomes a preliminary injunction-to one of appellate jurisdiction only. Id. at 1193 n. 8. Accordingly, the court held that the TRO at issue "became a preliminary injunction when [it], as orally extended by the district court, went beyond the time permissible under Rule 65. Thus, the proper course of conduct for Grossman was to treat the TRO as an erroneously granted preliminary injunction and to appeal." Id. at 1193 (footnote and citation omitted). The court concluded that because Grossman did not appeal the injunction, but instead violated it, he was properly held in contempt.

The Eleventh Circuit noted that none of the concerns underlying Rule 65's time limits on TROs were implicated by its ruling.

Two concerns about TROs are reflected in the case law and in Rule 65. First, restrained parties often have no opportunity for a hearing and may not know precisely what conduct is prohibited. Second, a restrained party may not obtain appellate review of a TRO. Our

---

**8.** In fact, in Sampson, the Supreme Court noted that the extended TRO "continue[d] in effect" at the time of the Court's decision. Sampson, 415 U.S. at 67, 94 S.Ct. 937.

holding respects both these concerns; Grossman and Grossman's client had the opportunity to contest the preliminary injunction (and had previous notice of the enjoined conduct) and also could have obtained appellate review of the injunction.

*Id.* at 1193 n. 8.

Here, as in *Levine,* the defendants had notice and an opportunity to contest the issuance of the TRO at an extensive TRO hearing. Further, the TRO was expressly extended by the Court until resolution of the preliminary injunction motion. The extended TRO was therefore appealable under *Sampson* as a preliminary injunction. As such, the proper course of conduct for defendants was to treat the TRO as an erroneously granted preliminary injunction and to appeal it.[9] They were not free to violate it under the theory that it expired after 20 days.[10] *See also Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co.,* 1995 WL 731633 (S.D.N.Y. Dec.8, 1995) (holding that defendant may be charged with contempt for violating a TRO issued after notice and hearing which was extended beyond the Rule 65 time limits).

## II. *Collateral Bar Doctrine*

■ Because the TRO in this case still existed, albeit as a preliminary injunction, after the expiration of the time limits in Rule 65(b), the defendants were required to obey it until it was modified, vacated or reversed, even if they had proper grounds to object to it. *See Maness v. Meyers,* 419 U.S. 449, 458, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Walker v. City of Birmingham,* 388 U.S. 307, 317–21, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States v. United Mine Workers of America,* 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Howat v. Kansas,* 258 U.S. 181, 189–90, 42 S.Ct. 277, 66 L.Ed. 550 (1922).

In *Walker,* the Supreme Court explained that the central tenet of obedience to court orders necessitates what has come to be known as the collateral bar doctrine which prohibits challenges to the validity of a court order as a defense to criminal contempt. There the Court acknowledged that both the injunction that gave rise to the contempt convictions of civil rights marchers and the underlying parade ordinance raised "substantial" constitutional questions. *Walker,* 388 U.S. at 316–17, 87 S.Ct. 1824. The Alabama courts had not permitted these constitutional challenges to be raised as a defense, but the Supreme Court nonetheless upheld the convictions, noting that the marchers, like the defendants here, had not appealed the injunction before disobeying it. The Court wrote:

> [I]n the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion. This Court cannot hold that the petitioners were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the petitioners' impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom.

*Id.* at 320–21, 87 S.Ct. 1824 (footnote omitted); *see also United States v. Cutler,* 58 F.3d 825, 832 (2d Cir.1995).

**9.** Defendants' attempt to distinguish *Levine* based on the fact that the alleged contemnor in that case was a lawyer rather than a layperson is unavailing for two reasons: (1) the Court's extension of the TRO in this case was clear and unequivocal so that even a layperson would have understood that the TRO was still in effect; and (2) defendants were represented by counsel in this case and have made no claim that counsel somehow misadvised them that the TRO had expired.

**10.** The Court accepts that where there has been no notice or hearing, a TRO continued past the Rule 65 time limits would expire pursuant to the Rule.

Here, because the Court's extended TRO, which became a preliminary injunction, still existed on the dates that defendants are alleged to have violated it, the defendants were required to comply with the order until it was modified or vacated through the judicial process. Defendants' alleged failure to comply with the order may be punished through criminal contempt. Under the collateral bar doctrine, defendants may not assert the possible invalidity of the order as a defense to a charge of criminal contempt. In fact, even if the order were later to be set aside on appeal, a finding of criminal contempt against the defendants would still stand. *See Buffalo Courier–Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 60 (2d Cir.1979) (unlike civil contempt, a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal).

There are only two exceptions to the collateral bar doctrine: (1) where the order exceeded the court's jurisdiction; or (2) where the order was "transparently invalid." *Cutler*, 58 F.3d at 832. Even to invoke the "transparently invalid" exception, however, a defendant must make some good faith effort to seek emergency relief from the appellate court, or show compelling circumstances for failing to do so. *Id.* (citations omitted).

Neither the "jurisdiction" exception nor the "transparently invalid" exception to the collateral bar doctrine apply in this case. There is no question that this Court had jurisdiction over the subject matter and personal jurisdiction over the defendants in this case. Thus, the TRO did not exceed the Court's jurisdiction.

Further, the Court's order extending the TRO beyond the time limitations in Rule 65(b) was not "transparently invalid." To the contrary, under the facts present here, the Court's order extending the TRO until the preliminary injunction motion was resolved was a valid exercise of the Court's authority. As explained above, at the time the Court issued the TRO, after an extensive TRO hearing, it was fully aware that it would not be able to complete the preliminary injunction hearing within the 20 days provided for in Rule 65(b). The Court has not found, nor have defendants cited, any case holding that a district court lacks the authority to extend the TRO beyond the time periods in Rule 65(b) under such circumstances or that such an extended TRO is automatically invalid. In fact, such a holding would be contrary to the Supreme Court's decision in *Sampson*. In *Sampson*, the district court extended the TRO past the 20–day time period in Rule 65(b) and the Supreme Court held that after 20 days, the extended TRO became a preliminary injunction. The Court then proceeded to review the merits of the preliminary injunction. Had the district court lacked authority to extend the TRO in the first instance, the Supreme Court would have never reached the merits of the preliminary injunction; it would have simply held that the extension of the TRO was invalid and vacated the order extending it. Tellingly, the entire *Sampson* decision concerns the validity of the extended TRO, but not once did the Court suggest, or even hint, that the extension of the TRO beyond the Rule 65 time periods somehow invalidated it.[11]

*Sampson, Pan Am.* and *Levine* all recognize implicitly that there may be instances when a district court cannot render a considered ruling on a motion for a preliminary injunction within the time periods in Rule 65(b). In such instances, the district court may extend the TRO beyond the Rule 65 time periods while it is considering the preliminary injunction motion, provided that the TRO was initially issued after notice and a hearing.[12] In such a situation, the extended TRO ceases being

---

11. This same analysis applies also to the Second Circuit's decision in *Pan Am.*

12. The fact that Rule 65(b) applies, on its face, only to TROs issued *ex parte* would also seem to support this proposition.

an unappealable TRO and becomes instead an appealable preliminary injunction. In this way, the defendant subject to the injunction is offered protection. The defendant can take an immediate appeal of the extended TRO/preliminary injunction and have it vacated if it was improvidently granted. The defendant may not, however, simply ignore the extended TRO and disobey it.

The necessity of a district court being able to extend a TRO in order to complete its consideration of a preliminary injunction motion, as recognized in *Sampson, Pan Am.* and *Levine,* is perhaps best illustrated by a simple example. Take, for instance, a case where a plaintiff seeks a TRO and preliminary injunction that would enjoin a defendant from tearing down a building. The issues involved in the case are fact intensive and there are conflicting fact affidavits. On notice and after a hearing, the district court grants the plaintiff's request for a TRO, finding that the plaintiff will suffer irreparable harm if the building is torn down. For various reasons, however, none of which are the fault of the plaintiff, the court cannot complete the preliminary injunction hearing and render findings of fact and conclusions of law within the 20–day time period in Rule 65(b). Under the theory put forth by defendants here, the district court in this example would be powerless to extend the TRO even one day to complete the preliminary injunction hearing because the 20–day time limit in Rule 65(b) is absolute; the district court must either issue a preliminary injunction within 20 days, presumably based solely on the conflicting fact affidavits, or allow the TRO to expire on the 21st day thereby freeing the defendant to tear down the building. Certainly this cannot be the law. Because the Second Circuit has repeatedly held that motions for preliminary injunction should

not be resolved on the basis of affidavits that evince disputed issues of fact, *see supra note 3,* the issuance of a preliminary injunction based solely on the conflicting fact affidavits is not a viable option for the district court. Yet the court cannot allow the TRO to expire because the same threat of irreparable harm to the plaintiff that existed at the time the TRO was issued still exists. In other words, the plaintiff would be forced to suffer irreparable harm, *i.e.,* the building being torn down, simply because the court was unable to resolve the preliminary injunction motion within 20 days. Such a result is unfair to the plaintiff and cannot be countenanced.[13] Thus, the district court must have the ability to extend the TRO until the preliminary injunction motion is resolved. Defendant's protection lies in the fact that he can appeal the extended TRO as a preliminary injunction.

The situation in the example is exactly the situation here. Following notice and a hearing, the Court issued a TRO, upon finding that plaintiffs would suffer irreparable harm if injunctive relief were not granted. The issues regarding the preliminary injunction motion were fact intensive and the Court had before it conflicting fact affidavits. The Court realized that it would be unable to complete the preliminary injunction hearing and render a considered decision on the preliminary injunction motion within the 20–day time period in Rule 65(b). In fact, the preliminary injunction hearing itself ultimately lasted more than 20 days. Because the threat of irreparable harm to the plaintiffs still existed, the Court extended the TRO until the preliminary injunction motion was resolved. Under *Sampson, Pan Am.* and *Levine,* the extended TRO became a preliminary injunction and under the collateral bar doctrine, defendants were required to either appeal it or obey it.[14] Defen-

---

**13.** Such a result could also provide defendants with an incentive to attempt to delay the preliminary injunction hearing beyond 20

days, thereby freeing them on the 21st day from the restraints of the TRO.

**14.** Defendants argue that because the burden of proof on a motion for injunctive relief is on

dants, however, without attempting to seek any type of judicial relief, proceeded to violate (or allegedly violate) the Court's order. Such conduct is not countenanced by any reading of the applicable case law and is subject to punishment for criminal contempt.

Defendants argue that even if the extended TRO were considered to be a preliminary injunction after the 20–day period expired, it would still have been "transparently invalid" because it was not supported by findings of fact and conclusions of law as required by Rule 52(b) of the Federal Rules of Civil Procedure. This argument is without merit.

In *Sampson*, the TRO that the Supreme Court ultimately reviewed on the merits did not contain findings of fact and conclusions of law pursuant to Rule 52(a). Nevertheless, the Supreme Court held that it was not foreclosed from examining the record to determine if sufficient allegations or sufficient evidence supported the issuance of the injunctive relief. *See Sampson*, 415 U.S. at 86–87 n. 58, 94 S.Ct. 937. Had the Supreme Court determined that the lack of findings of fact and conclusions of law automatically made a preliminary injunction invalid, the Court would not have reached the merits of the injunction. Instead, it would have simply labeled the extended TRO a preliminary injunction and declared it invalid for lack of findings of fact and conclusions of law. Indeed, that was exactly the course of action recommended by Justice Marshall in his dissent, *id.* at 98, 94 S.Ct. 937, but a majority of the court rejected such a result. *Id.* at 86–87 n. 58, 94 S.Ct. 937.[15]

Consistent with *Sampson*, the Second Circuit, when faced with preliminary injunctions not having sufficient findings of fact and conclusions of law under Rule 52(a), has consistently left the injunction in place and remanded the case back to the district court for proper findings of fact and conclusions of law, finding that it would be "inequitable to punish [the movant] for the district court's failure to make specific findings." *See, e.g., Rosen v. Siegel*, 106 F.3d 28, 33 (2d Cir.1997); *Inverness Corp. v. Whitehall Labs.*, 819 F.2d 48, 51 (2d Cir.1987).[16] Thus, defendants' ar-

---

the party seeking the injunction, they, as defendants, were not be required to seek appellate review of the extended TRO and were free to ignore it. This argument shows a lack of understanding of the collateral bar doctrine. Under the collateral bar doctrine, the only lawful means of contesting a court order is to seek judicial review of it. Otherwise, the order must be obeyed. As the Supreme Court has stated, "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 386, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980). Thus, the burden was on defendants to appeal the order if they no longer wanted to obey it.

**15.** In *Granny Goose*, which was decided less than a month after *Sampson*, Justice Marshall, writing for the Court this time, stated in *dicta* that "[w]here a temporary restraining order has been continued beyond the time limits permitted under Rule 65(b), and where the required findings of fact and conclusions of law have not been set forth, the order is invalid." *Granny Goose*, 415 U.S. at 443 n.

17, 94 S.Ct. 1113 (citations omitted). This Court notes the obvious tension between this language and the holding in *Sampson*. This language appears to be basically the same language that Justice Marshall used in his dissent in *Sampson*, but it was rejected by the majority of the Court in that case. Justice Marshall makes no attempt in *Granny Goose* to distinguish *Sampson;* in fact he does not even mention *Sampson*. In any event, since this language in *Granny Goose* was only *dicta* (the TRO in *Granny Goose* was not, in fact, extended and therefore expired under Rule 65(b)), the Court shall follow the Supreme Court's holding in *Sampson*.

**16.** Defendants reliance on the *dicta* in *Tekkno Labs., Inc. v. Perales*, 933 F.2d 1093, 1097 (2d Cir.1991)-predicting that if the district court had not supplemented a preliminary injunction with subsequent fact finding, the circuit court "would have been compelled" to vacate the injunction and any order of contempt based on the injunction is misplaced for three reasons: (1) the language relied upon is, in fact, *dicta* and appears to be inconsistent with other Second Circuit precedent; (2) *Tekkno* dealt with a finding of civil, not criminal

gument that the extended TRO was "transparently invalid" and that they did not have to obey it because it did not contain sufficient findings of fact and conclusions of law cannot withstand scrutiny under *Sampson* and Second Circuit precedent.

In any event, even if it is assumed *arguendo* that the Court's extended TRO was somehow "transparently invalid," defendants cannot avoid the collateral bar doctrine because they made no effort to seek emergency relief from the appellate court and have pointed to no compelling circumstances justifying their decision to ignore the order. *See Cutler,* 58 F.3d at 833 (citations omitted). Thus, the "transparently invalid" exception is unavailable to them.

### III. *18 U.S.C. § 401(3)*

■■■ Defendants also argue that they cannot be held in contempt under 18 U.S.C. § 401(3) because the extended TRO was not "lawful" within the meaning of the statute. Section 401(3) provides:

> A court of the United States shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as ... [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command.

The Court finds defendants' argument without merit for two reasons. First, as discussed above, the Court finds that its extension of the TRO beyond the 20–day limitations period was a lawful and valid exercise of the Court's authority. Second, "lawful," as used in § 401(3), does not have the meaning that defendants attribute to it. Defendants appear to be arguing that in order for a court order to be "lawful" for purposes of § 401(3), it must be correct in all respects. This argument, however, is directly contrary to the collateral bar doctrine. Under the collateral bar doc-

trine, a defendant may be held in criminal contempt under § 401(3) even for an order that is later determined to be invalid or incorrect. Thus, the word "lawful" in § 401(3) cannot mean that the order must be free from all error. It simply means that the order must be free from such plain jurisdictional defects as to render it manifestly inoperable. Because the Court unquestionably had jurisdiction in the *Spitzer* case, the extended TRO was "lawful" within the meaning of § 401(3).

### IV. *Objection to Appearance of Amici and Motion to Dismiss*

At oral argument on the objections to the Magistrate Judge's Report and Recommendation, the defendants renewed their objection to the appearance of the *amici* in this criminal contempt proceeding. Defendants argue that the case should now be dismissed because the appearance of the *amici* has irrevocably tainted the proceedings. In the alternative, defendants ask that the *amici* be dismissed from the case and that the Court not consider their briefs or arguments. Defendants also move to have the United States Attorney's Office disqualified because it has discussed the case with the *amici.* The Court finds defendants' arguments frivolous.

Defendants have failed to cite any authority that would require the dismissal of the action based on the appearance of the *amici* or that would prohibit the appearance of *amici* in this case. The *amici* have an interest in this case as they are the parties who brought the contempt allegations in the first instance in the underlying civil action. Accordingly, the Court denies defendants' motion regarding the *amici* in its entirety.

### V. *Motion for Recusal*

■■■ Defendants contend that the Court should recuse itself from this case, pursu-

---

contempt; and (3) the district court in *Tekkno* lacked subject matter jurisdiction to enter the

preliminary injunction. *Id.* at 1099.

ant to Rule 42(b) of the Federal Rules of Criminal Procedure and 28 U.S.C. § 455, because: (1) the Court heard evidence relating to the alleged contempt violations during the preliminary injunction hearing in the underlying civil action and during these contempt proceedings; and (2) the Court is being called upon to rule on the validity of its own order, which forms the basis of the contempt charges in this case. The Court finds that recusal is not required or warranted in this case.

Although Rule 42(b) disqualifies a judge from presiding over a contempt hearing where "the contempt charged involves disrespect to or criticism of [that] judge," disobedience of a court order does not fall within that category. *See Nilva v. United States,* 352 U.S. 385, 395–96, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957); *In re Puerto Rico Newspaper Guild Local 225,* 476 F.2d 856, 859 (1st Cir.1973) (rejecting contemnor's argument that district court should have disqualified itself from contempt proceeding simply because it issued the TRO that was alleged to have been violated).

Under 28 U.S.C. § 455(a), a judge is required to recuse himself "in any proceeding in which his impartiality might reasonably be questioned." [17] "[T]he test to be applied is an objective one which assumes that a reasonable person knows and understands all the relevant facts." *In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). Generally, grounds for recusal may not be predicated on a judge's prior judicial rulings or involvement in the case, but must arise instead from some extrajudicial source. *Liteky v. United States,* 510 U.S. 540, 554–55, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

Here, defendants argue that because they are attacking the validity of the Court's TRO in their motion to dismiss, an objective observer might reasonably question the Court's impartiality. However, defendants have not cited, nor has the Court found, any authority that would require the Court's recusal under these circumstances. District courts are often called upon to review challenges to the validity of their own decisions. For example, on motions for a new trial, motions for judgment of acquittal, and motions for reconsideration, a district court must often review challenges to the correctness of its own orders and actions. Under defendants' argument, recusal would be required in each of those instances. In fact, under defendants' theory, a defendant charged with contempt for violating a court order could always cause the disqualification of the judge who issued the order by simply challenging the order's validity. Such a result is simply not required under § 455(a).

Nor is the Court's recusal mandated by the fact that it previously heard evidence relating to the alleged contempt violations during the preliminary injunction hearing and during the instant contempt proceedings. Any opinions based on facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute grounds for recusal under § 455(a), "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky,* 510 U.S. at 550–51, 555, 114 S.Ct. 1147. No such showing has been made here.

## VI. *Other Pending Motions*

Defendants have two other pretrial motions pending: (1) a motion to dismiss on the ground that their actions on the dates in question were protected by the First Amendment; and (2) a motion for change of venue to Rochester, New York. Both of these issues were previously raised and addressed in the underlying civil action. Accordingly, due to the Court's familiarity

---

17. Section 455(b) applies when a judge, in fact, has a personal bias or prejudice concerning the parties or the case or personal knowledge about the case. Defendants do not suggest that this section applies to the instant situation.

with these issues, it will go ahead and resolve these motions on the papers rather than referring them back to the Magistrate Judge.

### A. Motion to Dismiss on First Amendment Grounds

Defendants argue that the contempt charges against them should be dismissed because their alleged violations of the Court's TRO, even if true, were protected First Amendment actions constituting a legal defense to the contempt charges. Defendants raised similar arguments in opposition to the motion for preliminary injunction in the underlying civil action.[18] The Court addressed these arguments in its preliminary injunction decision filed July 26, 2000, in the underlying civil action. *See Spitzer,* Item No. 178. The Court hereby incorporates by reference that decision and relies on the reasoning therein to find that the TRO did not violate defendants' rights under the First Amendment.[19]

In their motion, defendants note that the Court's TRO provided that "nothing in this Order shall be construed to limit defendants and those acting in concert with them from exercising their legitimate rights under the First Amendment of the United States Constitution." *Spitzer,* Item No. 38 at 16. Defendants argue that because they were doing nothing more than exercising their First Amendment right to protest, their actions did not violate the TRO. The Court finds this argument without merit. The TRO clearly and unequivocally prohibited defendants from being present within certain buffer zones

located outside reproductive health care clinics located within the District. Thus, even if defendants' activities would normally have been protected by the First Amendment had they taken place outside those buffer zones, the TRO prohibited defendants from engaging in those same activities within the buffer zones.

### B. Motion for Change of Venue

Defendants have moved for a change of venue from this part of the Western District of New York located in Buffalo, to the part of the Western District located in Rochester. In other words, defendants ask for an "intradistrict" change of venue.

Although not expressly stated by defendants in their papers, it would appear that they are moving for change of venue pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, which provides:

> For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district.

The Advisory Committee Notes state that standard to be applied for change of venue in criminal cases is similar to that applied under 28 U.S.C. § 1404(a) in civil cases.

At the outset, the Court notes that Rule 21(b) only provides for transfer of a criminal case from one district to another district, not from one court within a district to another court within the same district. Thus, it is not clear that the relief that defendants seek is even available under the applicable Rule.

Even if such relief were available, the Court finds that a change of venue is not

---

18. In *Spitzer,* defendants argued that the requested preliminary injunction would violate their free speech rights. Here, they argue, in their papers, that their actions were "protected exercises of free speech and *religion.*" *See* Defendants' Notice of Joint Motion at 14 (emphasis added). Because defendants fail to offer any argument regarding freedom of religion, the Court considers only those arguments relating to freedom of speech.

19. Further, even if defendants believed that their actions were protected by the First Amendment, they were still required under the collateral bar doctrine to obey the TRO/preliminary injunction. *See Walker,* 388 U.S. at 316–17, 87 S.Ct. 1824 (holding that even where injunction that gave rise to the contempt convictions and the underlying parade ordinance raised "substantial" constitutional questions, civil rights marchers were still required to abide by the injunction).

warranted under the facts and circumstances present here. Defendants ask for a change of venue "[for] their own convenience, and in the interest of justice (*i.e.*, obtaining a neutral and detached Article III federal judge)." Defendants' Notice of Joint Motion, at 15. Defendants made a similar motion in the underlying civil action and the Court denied that motion in a decision filed June 16, 1999. *See Spitzer,* 69 F.Supp.2d at 416–19. The Court hereby incorporates by reference that decision, and based on the reasoning therein, denies the motion for change of venue. In fact, the Court's increased familiarity with *Spitzer* and this case, gained since the time of its previous decision, now makes an even stronger case for retaining venue in this Court.

The Court further notes that defendants' desire to obtain a different judge does not present a valid legal reason for change of venue. Neither Rule 21(b) nor § 1404(a) was intended to allow judge shopping by litigants. *See Betts v. Atwood Equity Coop. Exch., Inc.,* 1990 WL 92495, at *1 (D.Kan. Jun. 13, 1990).

### CONCLUSION

For the reasons stated, the Court: (1) denies defendants' motions to dismiss the contempt charges; (2) denies defendants' motions to disqualify the *amici* and the United States Attorney; (3) denies defendants' motion for recusal; and (4) denies defendants' motion for change of venue. Further, after careful consideration of the facts and circumstances present here, the Court hereby limits the maximum possible punishment in this case to a term of imprisonment of six months or a fine of $5000. A bench trial shall commence on May 1, 2001 at 9:30 a.m. A final pretrial conference shall be held on April 30, 2001 at 11:00 a.m.

IT IS SO ORDERED.